561 S.E.2d 360

**Beth B. WEAVER, as Personal Representative of the Estate of William Scott Weaver, Respondent/Appellant,**

v.

**John Luther LENTZ, Jr., Appellant/Respondent.**

No. 3458.

Court of Appeals of South Carolina.

Heard Nov. 8, 2001.
Decided March 4, 2002.

Julius W. McKay, II and Kathleen Devereaux Schultz, both of McKay, McKay & Settana, of Columbia, for appellant/respondent.

Kenneth M. Suggs, D. Michael Kelly, B. Randall Dong, and Shannon Lee Felder, all of Suggs & Kelly, of Columbia, for respondent/appellant.

STILWELL, J.:

In this wrongful death action, the parties filed cross appeals from the jury's award of actual and punitive damages and the trial judge's reduction of the verdict. Dr. Lentz argues the trial court erroneously applied the wrongful death statute of limitations rather than the health care provider statute of limitations, erred in admitting certain evidence, and erred in denying his new trial motions. Weaver argues the trial court improperly reduced the amount of the actual damages based on comparative negligence. We affirm.

## BACKGROUND

Weaver initially visited Dr. Lentz, complaining primarily of neck pain and headaches resulting from an auto accident. Dr. Lentz saw Weaver on a regular basis during the ensuing years and tried several drug combinations to manage the pain with overlapping prescriptions and multiple substitutions. Weaver frequently complained of neck muscle pain, muscle spasms, headaches, insomnia, depression, and anxiety. He was hospitalized multiple times for physical problems where overdose or addiction concerns were noted. In December 1993, Weaver was hospitalized for psychiatric evaluation and treatment for addiction to prescription pain medications and was diagnosed with severe major depression and borderline personality disorder. On February 17, 1994, Weaver died from an overdose of Darvocet, a drug which had been prescribed by Dr. Lentz. The parties dispute whether the death was an accident or suicide. Weaver's widow, Beth, brought this wrongful death action as personal representative, alleging Dr. Lentz negligently over-prescribed pain medications under circumstances sufficient to put him on notice Weaver was addicted and abusing them.

One of Weaver's expert witnesses identified and charted the various medications, dosages, and dosage overlaps Weaver had been prescribed over the years. Another expert testified Weaver was addicted to prescription medication at the time of his death, and Dr. Lentz should have been aware of the developing addiction problem. A third expert testified Dr. Lentz was negligent in his prescribing practices, based on the number of medications prescribed at one time, the drug class combinations, the long term use of addictive medications, and the failure to adequately treat and monitor Weaver as an addict or abuser.

## I. Statute of Limitations

Dr. Lentz asserts the trial court erred in ruling the applicable statute of limitations was the wrongful death rather than the health care provider statute. Weaver counters with the argument that the statute of limitations should not be an issue because the court erred in allowing it to be raised as an affirmative defense by an amendment to the pleadings.

## A.

We first address Weaver's counter-argument, and find no error in allowing the amendment. The motion to amend was made and granted over objection on the day of trial before the case began. Weaver did not move for a continuance and has not demonstrated that the amendment was prejudicial. Amendments are liberally allowed within the sound discretion of the trial judge, and the opposing party must show prejudice to warrant reversal. *See Austin v. Conway Hosp., Inc.*, 292 S.C. 334, 338, 356 S.E.2d 153, 155–56 (Ct.App.1987); *Foggie v. CSX Transp., Inc.*, 315 S.C. 17, 22, 431 S.E.2d 587, 590 (1993). "Prejudice occurs when the amendment states a new claim or defense which would require the opposing party to introduce additional or different evidence to prevail in the amended action." *Ball v. Canadian Am. Exp. Co.*, 314 S.C. 272, 275, 442 S.E.2d 620, 622 (Ct.App. 1994). The evidence relevant to the statute was the same evidence relevant to other issues.

## B.

Dr. Lentz insists that since the evidence demonstrates both Scott and Beth Weaver knew or should have known that he was addicted to prescription medication before his death based on his hospitalization in December 1993 for treatment of depression and pain medication abuse, the three year statute of limitations should have begun to run by January 1994, at the latest. This argument is based on the premise that this wrongful death cause of action is in reality a medical malpractice case. This argument is unavailing, however, because the wrongful act complained of is Weaver's death, rather than his addiction. Thus, notice of Weaver's addiction prior to his death is irrelevant in this setting.

■ The wrongful death statute, commonly referred to as Lord Campbell's Act, created a new cause of action that was not recognized at common law. S.C.Code Ann. § 15–51–10 (1976 & Supp.2001); *Crosby v. Glasscock Trucking Co.*, 340 S.C. 626, 628, 532 S.E.2d 856, 856 (2000). A wrongful death cause of action does not exist before death and arises only upon the death of the injured person. *Hawkins v. Pathology Assocs. of Greenville, P.A.*, 330 S.C. 92, 104, 498 S.E.2d 395, 402 (Ct.App.1998). The statute of limitations applicable to wrongful death actions provides that the period begins to run upon the death of the person. S.C.Code Ann. §§ 15–3–530(6) (1976 & Supp.2001).

■ The wrongful death action was served on January 21, 1997, and thus was commenced within three years of Weaver's death. Dr. Lentz argues the language in *Garner v. Houck* that "wrongful death actions are actions to recover damages for injury to the person, and, therefore, the health care provider statute of limitations is applicable to wrongful death actions" makes it possible to have notice of a claim for wrongful death prior to an actual death. *Garner v. Houck*, 312 S.C. 481, 488, 435 S.E.2d 847, 850 (1993). This argument misses the point of *Garner*, which applied the health care provider statute of limitations to extend the discovery period subsequent to death because the autopsy results were necessary to discover the cause of the death and therefore give notice of a possible claim. In this case, the death itself was

notice, and the action was timely commenced under either the wrongful death or health care provider statute of limitations.

## II. Expert Testimony on Loss of Earnings

As part of the evidence of damages, Weaver presented the testimony of a vocational rehabilitation expert, Dr. William Stewart, and an economics expert, Dr. Oliver Wood. Dr. Lentz contends the court erred in admitting Dr. Wood's testimony about loss of future earnings because it lacked a proper factual foundation. We find no error.

Prior to Dr. Wood's testimony, Dr. Stewart evaluated Weaver's employment records from 1968 to October 1993. According to Dr. Stewart, Weaver's job performance showed a significant change from 1990 to 1991. Prior to that time, he had received good evaluations during his long employment with Springs Industries and his most recent employment with J.P. Stevens Automotive. However, his evaluation in October 1991 showed significant problems. Weaver was fired by J.P. Stevens and his subsequent employers for poor job performance and was last employed from August to October 1993. Dr. Stewart opined Weaver's employment history presented the classic profile of a person with an addiction problem. His peak earning capacity of approximately $51,000 per year was attained in 1989.

Weaver's treating psychiatrist noted in his discharge summary from the 1993 hospitalization that Weaver was "severely impaired with psychotic depression and severe borderline personality disorder," and opined that Weaver was "completely and entirely disabled" and would not be able to return to active work. When asked what effect these conclusions may have upon his opinion of Weaver's future employability, Dr. Stewart testified that if the findings were accepted as correct, Weaver would not be employable. Dr. Stewart indicated his initial opinion was made without reference to Weaver's medical records, but he did not recant his earlier testimony. No motion was made to have Dr. Stewart's testimony stricken, nor was it objected to as lacking factual foundation.

When Dr. Wood was called to testify, Dr. Lentz objected to the admission of his testimony because the economic calculations of future lost earnings were based upon Dr. Stewart's

vocational opinion, which was that Weaver had work skills and abilities which qualified him to earn up to at least $50,953 per year as demonstrated by his earnings in 1989. Dr. Lentz argued Weaver had no future earning capacity due to his psychological problems and that there was no evidence to support such testimony based on his more recent poor performance and inability to hold a job. The trial court overruled the objection.

 "The decision to admit or exclude expert testimony rests within the trial court's sound discretion and will not be reversed absent an abuse of that discretion." *Gazes v. Dillard's Dep't Store*, 341 S.C. 507, 512, 534 S.E.2d 306, 309 (Ct.App.2000). Dr. Wood's testimony unquestionably met the standard for admissibility, and any question as to its factual basis goes to its credibility, not its admissibility. The credibility of evidence is properly a question for the jury. The standard of admissibility for evidence of future damages is " 'any evidence which tends to establish the nature, character, and extent of injuries which are the natural and proximate consequences of [the] defendant's acts . . . if otherwise competent.' " *Pearson v. Bridges*, 344 S.C. 366, 372, 544 S.E.2d 617, 620 (2001) (quoting *Martin v. Mobley*, 253 S.C. 103, 109, 169 S.E.2d 278, 281–282 (1969)).

 Dr. Stewart's testimony provides sufficient foundation for Dr. Wood's economic calculations. Questions as to the accuracy of conclusions drawn go solely to the weight of the testimony, rather than its admissibility. *See Martin v. Mobley*, 253 S.C. 103, 109, 169 S.E.2d 278, 281 (1969) (fact that doctor had not had opportunity to examine particular patient's circumstance went "only to the weight and not the admissibility of the proffered evidence."). Additionally, there is some evidence independent of Dr. Stewart's testimony that Weaver's employment decline stemmed from his prescription drug addiction and that the addiction contributed to his psychiatric condition but was recoverable. The weight to be accorded Dr. Wood's testimony was a matter for the jury's determination. *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 534 S.E.2d 672 (2000).

> [I]t is not unusual for a case to have contradictory evidence and inconsistent testimony from a witness. In a law case

tried before a jury, it is the jury that must decide what part of the witness's testimony it wants to believe and what part it wants to disbelieve. Under such circumstances, it is not the function of this Court to weigh the evidence and determine the credibility of the witnesses.

*Small v. Pioneer Machinery, Inc.*, 329 S.C. 448, 465, 494 S.E.2d 835, 843–44 (Ct.App.1997) (citations omitted).

### III. New Trial Motions

■ Dr. Lentz contends the verdict lacks evidentiary support and the trial court erred in denying his motions for a new trial absolute or new trial nisi remittitur. His argument is premised primarily on his contention that Dr. Wood's testimony is not admissible. Having already addressed the issue of the admissibility of Dr. Wood's testimony, we find no error in the denial of the new trial motions.

■ The jury returned a verdict of $792,577 in actual damages, the exact amount testified to by Dr. Wood. His calculation of financial loss did not include other legitimate elements of damages that are recoverable in a wrongful death action, such as funeral expenses, grief, and sorrow. Beth Weaver testified she had to borrow money from her mother for funeral expenses and to make house payments immediately after Weaver's death. Wrongful death encompasses other elements of damages besides loss of earnings, and the court has no way to determine what significance the jury ascribed to these other factors. *See Pearson* at 372 n. 5, 544 S.E.2d at 619 n. 5; Case Notes to S.C.Code Ann. § 15–51–40 (1976 & Supp.2001); *Mishoe v. Atlantic Coast Line R.R. Co.*, 186 S.C. 402, 197 S.E. 97 (1938) (elements of damage in wrongful death action); *Hawkins* at 114, 498 S.E.2d at 407 (Damages under wrongful death statute are not directed toward the value of the life lost but the damages sustained by the beneficiaries from the death; setting forth general elements of recoverable damages.).

■ This evidence provided a factual basis for the verdict. Therefore, it was not error to deny the new trial motions. "The decision to grant a new trial is left to the sound discretion of the trial court and ordinarily will not be disturbed on appeal." *Rush v. Blanchard,* 310 S.C. 375, 380, 426

S.E.2d 802, 805 (1993) (also, to grant new trial absolute, verdict must be so grossly excessive as to shock the conscience and be the result of caprice, passion, or improper motive). The verdict is not grossly excessive considering the evidence of employability and other damages before the jury. *See* *O'Neal v. Bowles,* 314 S.C. 525, 431 S.E.2d 555 (1993).

 Likewise, the decision to grant a new trial nisi remittitur based on a verdict that is merely excessive is addressed to the sound discretion of the trial court. "Where the amount of a verdict bears a reasonable relationship to the character and extent of the injury sustained, it is not excessive." *Howle v. PYA/Monarch, Inc.,* 288 S.C. 586, 601, 344 S.E.2d 157, 165 (Ct.App.1986).

> The trial court has wide discretionary power to reduce the amount of a verdict which in his or her judgment is excessive. The decision of the trial judge to reduce the verdict will not be disturbed unless it clearly appears that the exercise of discretion was controlled by a manifest error of law. The trial judge who heard the evidence and is more familiar with the evidentiary atmosphere at trial possesses a better-informed view of the damages than this Court.

*Rush* at 381, 426 S.E.2d at 806 (citations omitted). Although the evidence of loss of earnings may be contradicted or proven less likely by other evidence, "it is well within the discretion of the jury, given the injuries and damages suffered and proved...." *Howle* at 602, 344 S.E.2d at 165. We find sufficient evidence of damages recoverable under the wrongful death statute to justify the jury's award of actual damages.

### IV. Board of Medical Examiners Stipulation

 Dr. Lentz argues the trial court erred in admitting a prior inconsistent statement for impeachment purposes. During cross examination, a stipulation entered into in a disciplinary proceeding before the State Board of Medical Examiners pertaining to Dr. Lentz's treatment of Weaver was used to impeach his trial testimony that he was not negligent in his prescribing practices. Defense counsel objected on the basis that the prejudicial effect of the stipulation outweighed the probative value because the jury would give undue weight to an official document. The court overruled the objection and

the written stipulation was admitted into evidence for impeachment purposes only. Dr. Lentz did not request a limiting instruction.

In the stipulation, Dr. Lentz admitted that he violated S.C.Code Ann. § 40–47–200(F)(7)(11) & (12) (Supp.1994) in over-prescribing controlled substances and failing to monitor and control Weaver's use of prescription medication. It further provided that the stipulation would be attached to and incorporated into a final order of the Board and "may be disseminated as a public action of the Board." Dr. Lentz was represented by counsel at the disciplinary proceeding at which he approved and signed the stipulation.

■ The extrajudicial stipulation was relevant to the disputed issue of whether Dr. Lentz breached a duty of care in his prescribing practices for Weaver. Dr. Lentz put his credibility at issue by testifying. It was appropriate to use the stipulation to test his credibility where he denied at trial that he over-prescribed prescription drugs and violated the statute, facts he had previously admitted. Dr. Lentz was afforded an opportunity to explain that he agreed to the stipulation under duress and that he did not agree with it. Moreover, the trial judge in his ruling noted that when a party witness takes the stand, he puts his credibility at issue and is subject to impeachment on cross examination. He expressly performed the balancing test required by Rule 403, SCRE on the record and found the probative value outweighed the prejudicial effect. The admission of evidence lies within the sound discretion of the trial court, and the court's decision will not be overturned on appeal absent an abuse of discretion. *Watson v. Chapman*, 343 S.C. 471, 478, 540 S.E.2d 484, 487 (Ct.App.2000) (no error in admission of written agreement between physician and Board of Medical Examiners where physician's alcohol dependency and its effect on decision making was contested issue). We find no error.

### V. Reduction of Damages By Comparative Negligence

■ The jury found both Dr. Lentz and Weaver fifty percent negligent and awarded actual damages of $792,577 and punitive damages of $10,000. Based upon the percentage of Weaver's negligence, the trial judge reduced the actual

damages award to $396,288.50. Weaver argues the actual damages award should not be reduced because, in assessing punitive damages, the jury implicitly found recklessness on the part of Dr. Lentz, which cancels out any comparative negligence on the part of Weaver. The trial judge denied the motion. We find no error.

██ Prior to 1991, contributory negligence was the law in South Carolina. Under that doctrine, it was generally held that if the negligence of the plaintiff contributed in any respect to his damages, he was completely barred from recovering against a defendant guilty of even greater negligence. *Langley v. Boyter,* 284 S.C. 162, 165–66, 325 S.E.2d 550, 552 (Ct.App.1984). Under one recognized exception to the contributory negligence rule, simple negligence on the part of the plaintiff was not a defense to reckless or willful misconduct on the part of the defendant. *Oliver v. Blakeney,* 244 S.C. 565, 569, 137 S.E.2d 772, 774 (1964). Contributory negligence was rejected in favor of comparative negligence in South Carolina in 1991. *Nelson v. Concrete Supply Co.,* 303 S.C. 243, 399 S.E.2d 783 (1991). Under the version of comparative negligence judicially adopted in *Nelson,* "a plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant. The amount of the plaintiff's recovery [is] reduced in proportion to the amount of his or her negligence." *Id.* at 245, 399 S.E.2d at 784. The rule Weaver asserts had a valid purpose under the very different contributory negligence scheme; however, the validity of this rationale is undercut by the offset inherent in the comparative negligence framework.

Weaver argues the courts of this state have not specifically overruled the principle that simple contributory negligence is no defense to recklessness; thus the trial court erred in reducing the actual damage award by fifty percent. However, the trial judge instructed the jury, without objection, as follows:

> In determining the respective negligence, if any, of the decedent and defendant, you must take the conduct of each party involved as a whole. In making this determination you should consider whether the conduct was merely careless or whether it was done consciously with an awareness

that negligence was involved.... You must determine whether the negligence—whether the decedent or the defendant was merely negligent or careless or whether they were grossly negligent, reckless or consciously disregarded—consciously disregarded information that they should've considered in making their decisions.

The jury was instructed to apportion the respective negligence of each party by percentage if they concluded both were negligent and that such joint negligence proximately contributed to the plaintiff's injuries. The jury was given a separate instruction on punitive damages. Additionally, they made no specific finding that the defendant was willful, wanton, or reckless. As instructed, the jury considered the concepts of simple negligence, gross negligence, and recklessness as matters of degree subsumed within the general term "negligence."

In similar fashion, other concepts well recognized under the doctrine of contributory negligence have been held to have been subsumed within the concept of comparative negligence. *Davenport v. Cotton Hope Plantation*, 333 S.C. 71, 86–87, 508 S.E.2d 565, 573–74 (1998) ("[A]bsolute defense of assumption of risk is inconsistent with South Carolina's comparative negligence system ..."; unless assumption of risk can be characterized as express or primary implied assumption, plaintiff is not barred from recovery if degree of fault arising from assumed risk is less than defendant's negligence.). *Spahn v. Town of Port Royal*, 330 S.C. 168, 173, 499 S.E.2d 205, 208 (1998) (Doctrine of "last clear chance has been subsumed by adoption of comparative negligence such that it remains a factor for the jury's consideration" in determining the respective fault of the parties but "does not totally relieve a plaintiff of his or her negligence."). *See* F. Patrick Hubbard & Robert L. Felix, *Comparative Negligence in South Carolina: Implementing Nelson v. Concrete Supply Co.*, 43 S.C. L.Rev. 273, 282–283 (1992).

The jury performed its duties consistent with the unobjected—to instructions of the trial court, and the trial court appropriately exercised its duties pursuant to the concept of comparative negligence.

**AFFIRMED.**

HOWARD and SHULER, JJ., concur.