612 S.E.2d 695

**Brenda A. GUFFEY, Personal Representative of the Estate of James Fred Guffey, Appellant,**

**v.**

**COLUMBIA/COLLETON REGIONAL HOSPITAL, INC., W.W. King, M.D., and David E. Meacher, M.D., P.A., Respondents.**

**No. 25974.**

Supreme Court of South Carolina.

Heard Nov. 18, 2004.

Decided April 25, 2005.

John E. Parker and Bert G. Utsey, III, both of Peters, Murdaugh, Parker, Eltzroth & Detrick, P.A., of Walterboro, for appellant.

C. Mitchell Brown, Zoe Sanders Nettles, and Elizabeth Herlong Campbell, all of Nelson Mullins Riley & Scarborough, of Columbia, for respondent Columbia/Colleton Regional Hospital, Inc.

Stephen L. Brown, John Hamilton Smith, and D. Jay Davis, Jr., of Young, Clement, Rivers & Tisdale, of Charleston, for respondents W.W. King, M.D. and David E. Meacher, M.D., P.A.

Acting Chief Justice MOORE:

Appellant commenced this wrongful death action as personal representative of her husband's estate alleging medical malpractice. She appeals a directed verdict and the exclusion of evidence. We affirm.

## FACTS

James Guffey (Decedent) suffered cardiac arrest at age fifty on September 3, 1997, twenty-five hours after he was discharged from the emergency room at respondent Columbia/Colleton Regional Hospital (Hospital). Decedent had previously undergone two angioplasty surgeries in 1995 to treat unstable angina and subsequently was on medication, including nitroglycerin as needed for pain. He had a check-up every month with his cardiologist, Dr. Reeves.

Two years after his surgeries, on September 2, 1997, Decedent came home early from work complaining of a headache and indigestion. During the course of the evening, Decedent took three doses of nitroglycerin. Finally, at about 11:00 p.m., Decedent said he needed to go to the hospital because he "felt like he did the last time," referring to his 1995 cardiac episode. At Hospital's emergency room, Decedent was treated with nitroglycerin paste and discharged by Dr. William King.[1]

Decedent stayed in bed the next day still complaining of headache and indigestion. During the night, he suffered cardiac arrest. He was brain-dead by the time he arrived at the hospital and died several days later.

Dr. King testified he had attempted to contact Decedent's cardiologist, Dr. Reeves, while Decedent was at the emergency room. The call was answered by Dr. Reeves's associate, Dr. Grayson. Dr. Grayson told Dr. King that it was reasonable to send Decedent home but to have him see Dr. Reeves in the morning. Dr. King told Decedent to return to the emergency room if he had pain during the night and if he had no pain, he should call Dr. Reeves's office in the morning for an appointment. Decedent did not seek further medical care before suffering cardiac arrest the next night.

Appellant's medical expert, Dr. Wood, testified that Decedent's symptoms indicated he had unstable, as opposed to stable angina, and therefore he should not have been dis-

---

1. Dr. King was named as a defendant. The parties agreed before trial that the action would proceed solely against Hospital because Dr. King was acting as Hospital's agent. *See Simmons v. Tuomey Reg. Med. Center,* 341 S.C. 32, 533 S.E.2d 312 (2000) (hospital's liability for acts of doctor-agent).

charged from the emergency room.[2] Dr. Wood testified that the pain caused by stable angina is relieved with nitroglycerin whereas the pain from unstable angina is not. Decedent's history taken at the emergency room indicated he had "relief of the chest pain but still had tightness in his chest." From this history, Dr. Wood concluded Decedent was suffering unstable angina. It was his opinion that Dr. King deviated from the standard of care in not admitting Decedent to the hospital.

Hospital's medical experts, on the other hand, testified Decedent's symptoms indicated he had stable angina because he did have pain relief from the nitroglycerin with only "residual tightness."

The jury returned a verdict for Hospital on the issue of Dr. King's negligence in failing to admit Decedent to the hospital.

## ISSUES

1.  Did the trial court err in granting a directed verdict regarding conflicting discharge instructions?
2.  Did the trial court err in excluding evidence of conflicting discharge instructions?

## DISCUSSION

### 1. Directed verdict

Appellant accompanied Decedent to the emergency room. On cross-examination, she denied Decedent was told at the time of his discharge to contact his cardiologist, Dr. Reeves, in the morning. On re-direct, counsel referred to a document

---

2.  According to medical testimony in the record, stable angina occurs when the coronary arteries become occluded over time and smaller arteries take over to aid in carrying blood to the heart muscle. In this instance, the patient feels pain only on exertion because the smaller arteries cannot handle the extra need for blood. The pain of stable angina improves with rest or with nitroglycerin. Unstable angina, on the other hand, occurs when an artery is suddenly occluded by a blood clot. The patient feels pain, or more frequent pain, even when resting. The pain is not relieved with nitroglycerin. A patient with unstable angina should be admitted to the hospital to prevent the clot from getting bigger. If the blockage becomes too large, the patient will suffer a heart attack.

entitled "Aftercare Instructions" which Decedent was given by Hospital's staff when he was discharged. The document states: "THESE ARE YOUR FOLLOW–UP INSTRUC-TIONS! Call Dr. Hiott [Decedent's family doctor] in 2 days if not much better. Call sooner if worsening." This document was admitted into evidence.

At the close of appellant's case, Hospital moved for a directed verdict on the allegation that Hospital was negligent in giving these aftercare instructions which conflicted with Dr. King's instructions to contact the cardiologist in the morning. The trial judge found appellant had presented no evidence the discrepancy in instructions was the proximate cause of Decedent's death and granted the motion.[3]

▮▮▮ A directed verdict should be granted where the evidence raises no issue for the jury as to the defendant's liability. *Roberts v. Hunter*, 310 S.C. 364, 426 S.E.2d 797 (1993). On review, we will affirm a directed verdict where there is no evidence on any one element of the alleged cause of action. *First State Savings and Loan v. Phelps*, 299 S.C. 441, 385 S.E.2d 821 (1989). In a medical malpractice action, the plaintiff must establish proximate cause as well as the negligence of the physician. *Ellis v. Oliver*, 323 S.C. 121, 473 S.E.2d 793 (1996).

▮▮▮ There is no evidence Decedent relied on Hospital's aftercare instructions and for this reason did not call his cardiologist. Further, the record contains no expert testimony Decedent's death could have been prevented had he seen his cardiologist the next morning. *See Bramlette v. Charter–Medical–Columbia*, 302 S.C. 68, 393 S.E.2d 914 (1990) (expert testimony is required to establish proximate cause in a medical malpractice case if outside the common knowledge or experience of laypersons); *Green v. Lilliewood*, 272 S.C. 186, 249 S.E.2d 910 (1978) (medical malpractice plaintiff relying on

---

3. Appellant makes a procedural argument that the trial judge should not direct a verdict on one specification of negligence if any other specification is supported by the evidence. The cases appellant cites do not stand for this proposition and we find it without merit. *Cf. Young v. Charleston & W.C. Ry. Co.*, 229 S.C. 580, 93 S.E.2d 866 (1956) (where defendant moved for directed verdict to keep *entire case* from being submitted to jury, motion properly denied because evidence supported at least one specification of negligence).

expert testimony must introduce evidence that defendant's negligence most probably resulted in the injuries alleged). Because there is no evidence the conflicting discharge instructions proximately caused Decedent's death, the trial judge properly granted a directed verdict on this allegation of negligence.

### 2. Exclusion of evidence

■ Hospital moved to strike the "Aftercare Instructions," along with evidence of Hospital's internal policies regarding discharge instructions, after withdrawing comparative negligence as a defense. In light of counsel's assurance comparative negligence would not be argued to the jury, the trial judge found the contested evidence irrelevant and granted the motion to strike.[4]

■ We find no error. When the directed verdict on the issue of Hospital's negligence for conflicting instructions was properly granted, this evidence became irrelevant. Comparative negligence was not argued in closing nor submitted to the jury. Because there was no issue of Decedent's negligence that might be explained by an inference he followed these instructions, there was no prejudice from the exclusion of this evidence. The exclusion of evidence that is not relevant to some matter in issue cannot be prejudicial. *See Otis Elevator, Inc. v. Hardin Const. Co. Group, Inc.,* 316 S.C. 292, 450 S.E.2d 41 (1994) (no error in the exclusion of evidence absent a showing of prejudice).

### CONCLUSION

Appellant's remaining issues are without merit and we affirm pursuant to Rule 220(b), SCACR. *See* Issue 2: *Green v. Lilliewood,* 272 S.C. 186, 249 S.E.2d 910 (1978) (medical malpractice plaintiff relying on expert testimony must introduce evidence that defendant's negligence most probably resulted in the injuries alleged); Issue 4: *Keaton ex rel. Foster v. Greenville Hosp. System,* 334 S.C. 488, 514 S.E.2d 570

---

4. Further, the trial judge refused appellant's counter-motion that the discharge sheet with Dr. King's instructions also be struck. Dr. King's discharge instructions remained relevant since they indicated his treatment conformed to the standard of care.

(1999) (jury charge correct if when read as whole, charge contains correct definition and adequately covers law); *see also State v. Smith*, 315 S.C. 547, 446 S.E.2d 411 (1994) (jury instructions should be considered as whole, and if as whole they are free from error, any isolated portions which may be misleading do not constitute reversible error).

**AFFIRMED.**

WALLER, J., and Acting Justices REGINALD I. LLOYD and R. MARKLEY DENNIS, JR., concur. BURNETT, J., dissenting in a separate opinion.

Justice BURNETT, Dissenting:

I respectfully dissent. The trial court committed reversible error in granting a directed verdict on one of Appellant's central allegations of negligence and in excluding evidence related to that allegation.

This appeal offers a textbook example of an instance in which Appellant was erroneously prohibited from presenting crucial, admissible evidence and testimony to prove her case to the jury. The prejudicial error, in my opinion, is clear and unambiguous, and Appellant is entitled to a new trial.

Appellant raises two related issues:

I. Did the trial court err in granting a directed verdict against Appellant on the issue of whether Hospital was negligent in providing conflicting discharge instructions? II. Did the trial court err in striking from evidence two exhibits relating to discharge instructions provided by Hospital and prohibiting testimony about those instructions?

## STANDARD OF REVIEW

In ruling on a motion for directed verdict, the trial court must view the evidence and the inferences which reasonably can be drawn therefrom in the light most favorable to the party opposing the motion. The trial court must deny the motion when either the evidence yields more than one inference or its inference is in doubt. *Strange v. S.C. Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994). If the evidence is susceptible of more than

one reasonable inference, the case must be submitted to the jury. *Quesinberry v. Rouppasong,* 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998). When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or resolve conflicts in the testimony or evidence. *Creech v. S.C. Wildlife and Marine Resources Dept.,* 328 S.C. 24, 491 S.E.2d 571 (1997). In essence, the appellate court must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor. *Harvey v. Strickland,* 350 S.C. 303, 309, 566 S.E.2d 529, 532 (2002); *Bultman v. Barber,* 277 S.C. 5, 7, 281 S.E.2d 791, 792 (1981).

The admission or exclusion of evidence is within the sound discretion of the trial court and the trial court's decision will not be disturbed on appeal absent an abuse of discretion. *Pike v. S.C. Dept. of Transp.,* 343 S.C. 224, 234, 540 S.E.2d 87, 92 (2000); *Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997). An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion without evidentiary support. *Carlyle v. Tuomey Hosp.,* 305 S.C. 187, 193, 407 S.E.2d 630, 633 (1991); *Fontaine v. Peitz,* 291 S.C. 536, 538, 354 S.E.2d 565, 566 (1987). To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, *i.e.,* there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof. *Hanahan v. Simpson,* 326 S.C. 140, 156, 485 S.E.2d 903, 911 (1997); *Timmons v. S.C. Tricentennial Commn.,* 254 S.C. 378, 405, 175 S.E.2d 805, 819 (1970); *Powers v. Temple,* 250 S.C. 149, 160, 156 S.E.2d 759, 764 (1967).

## I. DIRECTED VERDICT REGARDING CONFLICTING DISCHARGE INSTRUCTIONS

Appellant argues the trial court erred in granting a directed verdict on the issue of whether Hospital and its agent, King, were negligent in providing conflicting discharge instructions to Decedent. I agree.

It is undisputed Decedent was given conflicting discharge instructions by King and Hospital's staff. King testified he

verbally told Decedent to follow up with his cardiologist, Reeves, the next morning and he documented this instruction in emergency room records which were *not* provided to Decedent the night of his visit. In contrast, the written discharge instructions Decedent received from Hospital's staff, titled "Aftercare Instructions," stated: "THESE ARE YOUR FOLLOW–UP INSTRUCTIONS! Call Dr. Hiott [Decedent's family doctor] in 2 days if not much better. Call sooner if worsening." On cross-examination, Appellant denied knowing Decedent was told at the time of his discharge from the emergency room to contact his cardiologist in the morning.

At the close of Appellant's case, Hospital moved for a directed verdict on the allegation Hospital was negligent in giving conflicting discharge instructions. The trial judge granted the motion, ruling Appellant had not presented expert testimony the conflicting instructions were the proximate cause of Decedent's death.

This ruling constitutes reversible error. Appellant produced no *explicit* expert testimony Decedent's death was proximately caused by the failure to see his cardiologist the next morning. *See e.g. Bramlette v. Charter–Medical–Columbia*, 302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990) (expert testimony is required to establish proximate cause in a medical malpractice case if outside the common knowledge or experience of laypersons); *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 254, 487 S.E.2d 596, 599 (1997) ("unless the subject is a matter of common knowledge, the plaintiff must use expert testimony to establish both the standard of care and the defendant's failure to conform to that standard"). I disagree with the majority's conclusion the record contains no expert testimony Decedent's death was proximately caused by the failure to see his cardiologist the next morning. I also disagree with the majority's conclusion the record contains no evidence Decedent relied on the conflicting aftercare instructions.

A plaintiff may present both expert testimony and circumstantial evidence of a physician's culpability, and the inquiry need only be whether there is sufficient competent evidence from which the jury may infer a causal connection between the physician's conduct and the injury. *Green v. Lilliewood*, 272

S.C. 186, 189–93, 249 S.E.2d 910, 912–13 (1978) (reversing grant of directed verdict for defendant physician where plaintiff relied on both expert testimony and circumstantial evidence which showed plaintiff's medical problems began soon after insertion of intrauterine device); *Shelnitz v. Greenberg*, 200 Conn. 58, 509 A.2d 1023, 1027 (1986) (causation in medical malpractice case may be proven both by expert testimony, which usually is necessary to establish the standard of care, and circumstantial evidence); 1 Dan B. Dobbs, *The Law of Torts* § 173 (2001) (courts recognize juries must be permitted to make causal judgments from ordinary experience without demanding an impossible degree of proof and "[e]ven scientific or medical causation might be proven by circumstantial evidence leading to an inference of causation"); *Prosser & Keeton on the Law of Torts* § 41 (5th ed. 1984) ("Circumstantial evidence, expert testimony, or common knowledge may provide a basis from which the causal sequence may be inferred.").

Appellant's expert, Wood, testified that had Decedent been admitted to the hospital rather than discharged, he "more than likely would have survived." Wood testified "people have heart attacks and get hospitalized for it all the time, and, you know, these are general statistics, but probably ninety percent of people that get hospitalized with heart attacks live." A reasonable inference which may be drawn from this testimony is if Decedent had seen his cardiologist the next morning as directed by King, he could have been admitted to the hospital where he most likely would have survived his heart attack.

The expert's testimony that the proximate cause of Decedent's death was the lack of hospitalization at the time of his cardiac arrest was sufficient to submit to the jury the issue of Hospital's negligence, regardless of whether the lack of hospitalization occurred on the night of his visit to the emergency room or the morning after. Therefore, liberally construing the evidence Decedent did not return to his cardiologist the next morning as directed by King, Hospital gave Decedent discharge instructions stating he should wait two days to see his family doctor, and expert testimony he most likely would have survived had he been hospitalized at the time of his heart attack, it is reasonably probable a verdict would have been rendered in Appellant's favor had the jury been allowed to

consider negligence allegations relating to the conflicting discharge instructions.

In addition, the record contains circumstantial evidence Decedent relied on Hospital's written discharge instruction (call family doctor "in 2 days if not much better. Call sooner if worsening.") instead of King's verbal instruction (see cardiologist the next morning). Appellant testified Decedent stated on September 3 he did not need to return to the hospital because, although King had told Decedent he would have a "terrible headache" from the nitroglycerin, he expected to "be better in a day or two." Thus Decedent told his wife he needed to give his condition a couple of days to improve—just like Hospital told him to do in its written discharge instructions. *See e.g. Mahaffey v. Ahl*, 264 S.C. 241, 247, 214 S.E.2d 119, 122 (1975) ("it is axiomatic in this State that issues of negligence and proximate cause may be resolved by direct or circumstantial evidence").

In pointing to circumstantial evidence surrounding Decedent's actions, I do not suggest expert testimony is not usually required to prove medical malpractice. I do conclude that expert testimony identifying the lack of hospitalization as a proximate cause of Decedent's death, combined with circumstantial evidence Decedent may have relied on discharge instructions in which he was not told to follow up promptly with a cardiologist who may have admitted him to the hospital before he suffered a fatal heart attack, are sufficient to create a jury question on whether Hospital and its admitted agent were negligent. *See Green*, 272 S.C. at 189–93, 249 S.E.2d at 912–13; *Shelnitz*, 509 A.2d at 1027.

## II. EXCLUSION OF PLAINTIFF'S EXHIBITS PERTAINING TO DISCHARGE INSTRUCTIONS

Appellant contends the trial court committed prejudicial error in striking from evidence two exhibits relating to discharge instructions provided by Hospital and prohibiting testimony about those instructions. I agree.

The document titled "Aftercare Instructions," discussed above, was admitted in evidence by Appellant as Exhibit 18D. This document instructed Decedent to call his family doctor if he was not feeling better in two days. Appellant also offered

Exhibit 22, which set forth Hospital's policies regarding discharge instructions. Based on its earlier, directed verdict ruling that Appellant had failed to present expert testimony the conflicting instructions proximately caused Decedent's death, the trial court prohibited Appellant from questioning Hospital's witnesses about the exhibits or the conflicting discharge instructions.

Hospital moved to strike Exhibits 18D and 22 after withdrawing its defense of comparative negligence before the case was submitted to the jury. The trial court granted the motion, finding the exhibits were irrelevant because comparative negligence was no longer an issue.[5]

When evidence is erroneously excluded by the trial court, the appellate court usually engages in the following analysis to determine whether prejudice has occurred. First, the appellate court considers, *inter alia,* whether the error may be deemed harmless because equivalent or cumulative evidence or testimony was offered; the aggrieved party still managed to accomplish his primary objective, such as eliciting testimony about an issue or effectively cross-examining a witness; the jury's verdict or a proper court ruling rendered the wrongly excluded evidence moot because it was relevant to an issue that did not have to be reached; the aggrieved party failed to establish a claim or defense even when both the admitted and excluded evidence are considered; or the wrongly excluded evidence involved a generally known fact. *Fields v. Regional Medical Center,* 363 S.C. 19, 32–33, 609 S.E.2d 506, 513–14 (2005) (citing cases supporting each proposition).

Second, the appellate court considers whether, viewing a case as a whole, the wrongly excluded evidence or testimony was so crucial and important in proving the aggrieved party's claim or defense that its exclusion constitutes prejudicial

---

5. Further, the trial judge refused Appellant's counter-motion that the discharge sheet containing King's instructions also be struck if Exhibit 18D were struck. This ruling was correct. King's discharge instructions remained relevant because they indicated his treatment conformed to the required standard of care as established by his expert witnesses' testimony. The error was in not admitting the conflicting discharge instructions contained in Exhibit 18D, which constituted proof that Hospital and King's treatment did not conform to the required standard of care.

error, *i.e.*, the aggrieved party demonstrates there is a reason-able probability the jury's verdict was influenced by the lack of the evidence. *Id.* (citing cases).

The testimony of Appellant's medical expert that the proxi-mate cause of Decedent's death was the lack of hospitalization at the time of his cardiac arrest was sufficient to submit to the jury the issue of Hospital's negligence, regardless of whether the lack of hospitalization occurred on the night of his visit to the emergency room or the morning after. Exhibit 18D was relevant and admissible because it contained the conflicting discharge instructions given to Decedent. *See* Rules 401 and 402, SCRE (relevant evidence generally is admissible).

Violation of a rule or regulation designed primarily for the safety of hospital patients will constitute negligence if the violation proximately results in the injury. *Steeves v. U.S.,* 294 F.Supp. 446, 455 (D.S.C.1968). Furthermore, relevant rules of a defendant hospital or company are admissible in evidence in a personal injury action regardless of whether rules were intended primarily for employee guidance, public safety, or both, because violation of such rules may constitute evidence of a breach of the duty of care and the proximate cause of injury. *Tidwell v. Columbia Ry., Gas & Elec. Co.,* 109 S.C. 34, 95 S.E. 109 (1918); *see also Caldwell v. K–Mart Corp.,* 306 S.C. 27, 31–32, 410 S.E.2d 21, 24 (Ct.App.1991) (when defendant adopts internal policies or self-imposed rules and thereafter violates those policies or rules, jury may con-sider such violations as evidence of negligence if they proxi-mately caused a plaintiff's damages). Thus, Exhibit 22, which listed Hospital's policies and procedures on discharge instruc-tions, was relevant and admissible to establish and define the standard of care Hospital was required to meet with regard to discharge instructions.

King testified he was "stunned" and "very much surprised that [Decedent] had not seen his cardiologist the next day because I thought he was quite clear what he was to do." In light of expert testimony that King's instruction to see a cardiologist in the morning was appropriate, the implication that may be drawn from evidence heard by the jury is Decedent did not follow sound medical advice and, therefore, King should not be held responsible. In fact, Hospital's

counsel argued in closing that Decedent knew from his cardiologist, Reeves, he needed to seek immediate medical attention if his pain was not relieved with nitroglycerin, yet he did not return to the hospital the following day. If the exhibits and testimony about the conflicting discharge instructions had been allowed, Appellant could have argued the instructions contained in Exhibit 18D were circumstantial evidence which explained Decedent's failure to follow King's directions, as well as evidence of the negligence of Hospital and its agent.

In effect, Hospital gained an improper tactical advantage by withdrawing the issue of comparative negligence as a ground to exclude the conflicting discharge instructions—which left only the evidence that Decedent did not follow his doctor's orders. Hospital then implicitly asserted the defense of comparative negligence in closing arguments despite agreeing to abandon that defense.

Appellant did not present any equivalent or cumulative evidence about the conflicting discharge instructions; nor was Appellant able to accomplish her primary objective of demonstrating Hospital's alleged negligence on this ground through other testimony or evidence. Viewing the case as a whole, I conclude the wrongly excluded evidence and testimony was so crucial and important in proving Appellant's claim that its exclusion constitutes prejudicial error, *i.e.*, Appellant has demonstrated there is a reasonable probability the jury's verdict was influenced by the lack of the evidence.

I would reverse the jury's verdict and remand this matter for a new trial. The trial court committed reversible error in granting a directed verdict against Appellant on the issue of whether Hospital was negligent in providing conflicting discharge instructions. The trial court also committed reversible error in striking from evidence two exhibits relating to discharge instructions provided by Hospital and prohibiting testimony about the conflicting instructions.[6]

---

6. I agree with the majority the trial court did not err in granting a directed verdict on Appellant's claim Hospital was negligent due to King's failure to obtain and record an adequate medical history (Appellant's Issue 2). Appellant's own medical expert, Wood, testified the history taken was adequate to conclude Decedent was suffering from unstable angina. The record contains no evidence the failure to obtain

an adequate history caused a misdiagnosis of stable angina and most probably caused Decedent's death.

I also agree with the majority the trial court did not err in its jury instructions establishing a presumption Hospital met the standard of care (Appellant's Issue 4). When read as a whole, the charge properly informed the jury of the plaintiff's burden of proof and did not establish an erroneous presumption. *See Keaton ex rel. Foster v. Greenville Hosp. System*, 334 S.C. 488, 514 S.E.2d 570 (1999) (jury charge is correct if, when read as whole, it correctly defines and adequately covers the law).