659 S.E.2d 253

Kelvin THOMAS, Appellant,

v.

Jeffery DOOTSON, DMD, Respondent.

No. 4358.

Court of Appeals of South Carolina.

Heard Jan. 8, 2008.
Decided March 13, 2008.

Robert B. Ransom, of Columbia, for Appellant.

Charles E. Hill and R. Hawthorne, both of Columbia, for Respondent.

KITTREDGE, J.

This is an appeal from a directed verdict for Dr. Jeffrey Dootson in a medical malpractice case. The disposition of this appeal turns on whether there is evidence that Dr. Dootson had notice that a surgical drill overheated prior to the injury to the patient, Kelvin Thomas. Viewing the evidence in a light most favorable to Thomas, as we must, we find evidence Dr. Dootson had notice that the surgical drill was defective prior to the injury. As a result, we reverse and remand for a new trial.

**I.**

During oral surgery, Thomas' mouth was severely burned by a malfunctioning drill. Thomas filed a medical malpractice claim against Dr. Dootson and Palmetto Richland Memorial Hospital.[1] The trial court directed a verdict for Dr. Dootson at the close of Thomas' case.

The critical issue at trial, and before us on appeal, is whether Dr. Dootson had notice the surgical drill overheated prior to Thomas' injury. The case was tried on the premise that the surgical drill was defective. Beginning with his opening statement at trial, Dr. Dootson's counsel stated, "[t]he reason this injury occurred is quite simple. There was an equipment malfunction. The surgical drill that Dr. Dootson was using overheated and burned Mr. Thomas' mouth." This concession was reiterated on appeal, as Dr. Dootson acknowledged:

There has never been any real dispute that a defective surgical drill resulted in the burn to Thomas' lip. Indeed, the fact was essentially presumed at trial, since the Hospital, which had provided the drill, had already settled out of the case. The central issue at trial, therefore, was whether Dr. Dootson breached his standard of care by using the drill during the surgical procedure.

---

1. The claim against the hospital was settled prior to trial.

Dr. Dootson is bound by his concessions. *See Ex parte McMillan,* 319 S.C. 331, 335, 461 S.E.2d 43, 45 (1995) (stating an issue conceded at trial is procedurally barred from appellate review); *Shorb v. Shorb,* 372 S.C. 623, 628 n. 3, 643 S.E.2d 124, 127 n. 3 (Ct.App.2007) (holding a party is bound by a concession in his brief).

■ Dr. Dootson on appeal attempts to resurrect the need for expert testimony and recast the issue by stating, "[i]f the equipment at issue had been something simpler and more common, that argument might have some merit. The problem for Thomas, though, is that the proper operation of a surgical drill is *not* something within the lay knowledge of jurors." (emphasis in original). We believe the concession, as noted above, removed the need for expert testimony regarding standard of care concerning the operation of the surgical drill.

■ Were we in any event inclined to adopt Dr. Dootson's argument that his argument concerning the need for expert testimony is properly before us, we would reject it. Generally, expert testimony is required in medical malpractice cases to show the doctor failed to conform to the required standard of care; however, an exception exists when "the common knowledge or experience of laymen is extensive enough for them to be able to recognize or infer negligence on the part of the doctor and also to determine the presence of the required causal link between the doctor's actions and the patient's medical problems." *Pederson v. Gould,* 288 S.C. 141, 142, 341 S.E.2d 633, 634 (1986). The South Carolina Supreme Court has held a tubal ligation rendering an intrauterine device or any other birth control device useless constitutes a matter of common knowledge. *Green v. Lilliewood,* 272 S.C. 186, 192, 249 S.E.2d 910, 913 (1978). If the subject matter of *Green* is within the common knowledge exception, a claim arising from a surgical drill that burns skin on contact would fall well within the common knowledge or experience of laymen.

■ We turn to the dispositive issue of notice to determine if evidence of notice existed. When reviewing a directed verdict, this court will view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Bultman v. Barber,* 277 S.C. 5, 7, 281 S.E.2d 791, 792 (1981). "A jury issue exists where the evidence is susceptible of more

than one reasonable inference." *Jones v. Ridgely Commc'ns, Inc.*, 304 S.C. 452, 454, 405 S.E.2d 402, 403 (1991). "When considering directed verdict and JNOV motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Welch v. Epstein*, 342 S.C. 279, 300, 536 S.E.2d 408, 419 (Ct.App.2000). Further, this court stated in *Weaver v. Lentz*, 348 S.C. 672, 680–81, 561 S.E.2d 360, 365 (Ct.App. 2002):

> [I]t is not unusual for a case to have contradictory evidence and inconsistent testimony from a witness. In a law case tried before a jury, it is the jury that must decide what part of the witness's testimony it wants to believe and what part it wants to disbelieve. Under such circumstances, it is not the function of this Court to weigh the evidence and determine the credibility of the witnesses.

In the case at hand, Thomas presented testimony Dr. Dootson was warned of a drill overheating in a previous surgery and the drill being used for Thomas' surgery was hot. At trial, the following exchange occurred without objection during the questioning of surgical technician, Michael Ellis:[2]

Q: Mr. Ellis, there's no question, you said, that the drill malfunctioned?

A: Correct.

Q: No question that Dr. Dootson was warned about this drill?

A: Correct.

Q. After you had warned him and after it started getting hot, did Dr. Dootson do anything to check the drill to see whether it was still safe to use?

A. No.

Ellis also testified when Dr. Dootson passed him the drill prior to Thomas' injury, Ellis noticed the drill was "warmer than normal."

---

**2.** Dr. Dootson argues Ellis solely warned Dr. Dootson a drill malfunctioned in a prior surgery; however, this is not necessarily consistent with the testimony and is a question for the jury when weighing the testimony.

Additionally, the following colloquy occurred without objection during the direct examination of surgical technician, Charlotte Rivers:

Q: After you noticed the drill was getting hot, did you say anything to Dr. Dootson?

A: No.

Q: And why not?

A: He had already been told that the drill was hot.

. . . .

Q: Was [Dr. Dootson] aware there was a problem with the drill before [Thomas] got burned?

A: Yes.

Accordingly, a jury question was presented on the issue of notice, rendering a directed verdict inappropriate.

## II.

■ The trial court excluded some of the testimony regarding notice as hearsay. We address this assignment of error now in the interest of judicial economy. *See Floyd v. Horry County Sch. Dist.*, 351 S.C. 233, 234, 569 S.E.2d 343, 344 (2002) (addressing the merits in the interest of judicial economy).

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. Conversely, statements offered not for the truth of the matter asserted, but rather as evidence of notice, do not constitute hearsay. *Player v. Thompson*, 259 S.C. 600, 610, 193 S.E.2d 531, 535 (1972).

From an evidentiary standpoint, the facts and analysis in *Player* mirror those in this case. In *Player*, the court held testimony a filling station attendant told the defendant she had slick tires prior to the accident did not constitute hearsay. *Id.* The testimony was not offered to prove the tires were slick, but only to establish the defendant had notice of her tires' condition prior to the accident. *Id.* Other evidence established the slickness of the tires. *Id.*

Similarly in this case, Thomas attempted to offer additional testimony from Rivers that Dr. Dootson had been warned the

drill was hot prior to the injury. The trial court improperly ruled the statement was hearsay. The testimony, just as in *Player*, was not offered for the truth of the matter asserted, but rather as evidence of notice. The argument for admissibility is at least equally strong here as in *Player*, for here we are presented with a concession concerning the defective condition of the surgical drill. It was error to exclude this testimony.

We decline to address the remaining issues. *See Ringer v. Graham*, 286 S.C. 14, 20, 331 S.E.2d 373, 377 (Ct.App.1985) (determining discussion of remaining issues was unnecessary when an issue was dispositive in reversing a directed verdict).

## III.

The grant of the directed verdict is reversed, as is the ruling excluding Rivers' testimony. We remand for a new trial.

**REVERSED AND REMANDED.**

HEARN, C.J., and THOMAS, J., concur.