**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Wayne H. Copeland, as the Personal Representative of the Estate of Dorothy H. Copeland, deceased, Appellant,

v.

Carolina Pulmonary Physicians, P.A., Respondent.

Appellate Case No. 2017-001271

Appeal From York County
Brian M. Gibbons, Circuit Court Judge

Unpublished Opinion No. 2020-UP-209
Heard November 7, 2019 – Filed July 1, 2020

**REVERSED AND REMANDED**

David Andrew Manzi, of David A. Manzi, P.A., of Rock Hill, for Appellant.

Barbara A. Chesley and Carmen Vaughn Ganjehsani, both of Richardson Plowden & Robinson, PA, of Columbia, for Respondent.

**MCDONALD, J.:** In this action alleging medical malpractice, Wayne H. Copeland (Copeland), the personal representative of the estate of Dorothy H. Copeland (Dorothy), appeals the circuit court's orders granting Carolina Pulmonary

Physicians, P.A.'s (Carolina Pulmonary's) motion for a directed verdict and denying Copeland's motions to reconsider and for a new trial.[1] Copeland argues he adequately presented the prima facie case necessary for submission to the jury. We reverse and remand to the circuit court for a new trial.

**Facts and Procedural History**

Copeland filed a complaint against Carolina Pulmonary for medical malpractice, alleging its employee, Joan Edge, assisted his elderly mother, Dorothy, onto a weighing scale, turned her back while Dorothy was on the scale, and walked to the opposite side of the room. Dorothy fell, suffering serious injuries. At the time of the fall, Dorothy was ninety years old and in "frail condition." Copeland further alleged Edge failed to comply with the applicable standard of care by leaving Dorothy unattended on the scale, failed to take proper fall precautions, and failed to possess and exercise the degree of professional knowledge and skill required to assist a frail patient in a triage room.

At trial, Edge, a registered medical assistant, testified Dorothy was accompanied to her appointment at Carolina Pulmonary by her daughter-in-law, Deborah Copeland (Deborah). As Deborah and Dorothy walked into the triage room, Edge told them she needed to get Dorothy's weight. Edge confirmed she did not ask Deborah to put Dorothy on the scale but Deborah took it upon herself to do so. Edge testified Deborah assisted Dorothy onto the scale while she (Edge) walked across the room to put her chart on a desk. When Edge turned back around, Deborah was standing next to a chair beside the scale and Dorothy was falling.

Edge explained she did not help Dorothy onto the scale because Deborah was taking care of Dorothy and Edge needed to put her chart down. She believed it was fine for family members to assist patients onto the scale but clarified it was not acceptable for Deborah to leave Dorothy there unattended. Edge admitted she did not intervene when she saw Deborah helping Dorothy onto the scale and did not caution her not to leave Dorothy unattended.

Deborah testified she did not put Dorothy on the scale and confirmed Edge did not ask her to do so. Deborah stated that when she walked into the triage room, she let go of Dorothy's arm and went towards a chair to set down her belongings. When Deborah turned back around, Dorothy was on the floor. Deborah claimed she did

---

[1] Dorothy's death was unrelated to the medical malpractice alleged in this action.

not see Edge put Dorothy on the scale nor did she see Dorothy on the scale prior to the fall.[2]

The circuit court qualified Susan Davies, a registered nurse, as plaintiff's expert in medical assistant triage. Davies testified as to the fall prevention protocol a health care provider should follow when assisting a patient onto a scale and attending to her safety in a triage room. Davies opined Edge did not adhere to the standard of care because she was not at Dorothy's side to assist her onto and off of the scale. According to Davies, Edge should have immediately assisted Dorothy when Deborah walked her into the triage room and then employed the method Davies described to assist her on the scale. Davies reiterated it was not Deborah's job to put Dorothy on the scale, and confirmed Edge should have intervened if Deborah began to help Dorothy onto the scale. Davies concluded Edge's failure to adhere to the standard of care resulted in Dorothy's fall because the patient was left unsupported and unattended.

When asked whether her opinions were based only on the standard of care for weighing a patient in an office setting, Davies responded, "Yes." She conceded it was unknown whether Dorothy was on the scale when she fell, but reiterated Edge violated the standard of care because she was not attentive to the patient. Further, it was not acceptable for Edge to delegate her responsibility to supervise a frail patient to a family member. Davies declined to amend her opinion despite the discrepancy between Deborah's trial testimony and affidavit regarding whether or not Deborah saw Edge place Dorothy on the scale.

After Copeland rested his case, Carolina Pulmonary moved for a directed verdict. The circuit court granted Carolina Pulmonary's motion and denied Copeland's subsequent Rule 59, SCRCP, motions to reconsider and for a new trial.

**Law and Analysis**

"A directed verdict should be granted where the evidence raises no issue for the jury as to the defendant's liability." *Fletcher v. Med. Univ. of S.C.*, 390 S.C. 458, 462, 702 S.E.2d 372, 374 (Ct. App. 2010) (quoting *Guffey v. Columbia/Colleton Reg'l Hosp., Inc.,* 364 S.C. 158, 163, 612 S.E.2d 695, 697 (2005). "When reviewing a directed verdict, [the appellate] court will view the evidence and all

---

[2] Deborah's trial testimony contradicted her own 2016 affidavit, in which Deborah stated she saw Dorothy fall off the scale.

reasonable inferences in the light most favorable to the nonmoving party." *Thomas v. Dootson*, 377 S.C. 293, 296, 659 S.E.2d 253, 255 (Ct. App. 2008).

"When considering directed verdict and JNOV motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Id*. at 297, 659 S.E.2d at 255 (quoting *Welch v. Epstein,* 342 S.C. 279, 300, 536 S.E.2d 408, 419 (Ct. App.2000)).

> A plaintiff alleging medical malpractice must provide evidence showing: (1) the generally recognized and accepted practices and procedures that would be followed by the average, competent physician in the defendant's field of medicine under the same or similar circumstances, and (2) the defendant departed from the recognized and generally accepted standards.

*Hoard ex rel. Hoard v. Roper Hosp., Inc.*, 387 S.C. 539, 546, 694 S.E.2d 1, 4 (2010). "In a medical malpractice action, the plaintiff must establish proximate cause as well as the negligence of the physician." *Fletcher*, 390 S.C. at 462, 702 S.E.2d at 374 (quoting *Guffey,* 364 S.C. at 163, 612 S.E.2d at 697). "When expert testimony is the only evidence of proximate cause relied upon, the testimony 'must provide a significant causal link between the alleged negligence and the plaintiff's injuries, rather than a tenuous and hypothetical connection.'" *Hoard ex rel. Hoard*, 387 S.C. at 546-47, 694 S.E.2d at 5 (quoting *Ellis v. Oliver,* 323 S.C. 121, 125, 473 S.E.2d 793, 795 (1996)). "The probative value of expert testimony stands or falls upon an evidentiary showing of the facts upon which the opinion is, or must logically be, predicated." *Fletcher*, 390 S.C. at 463, 702 S.E.2d at 374 (quoting *Ward v. Epting*, 290 S.C. 547, 563, 351 S.E.2d 867, 876 (Ct. App. 1986)).

Initially, we note Copeland did not present testimony at trial establishing that Edge assisted Dorothy onto the scale. Carolina Pulmonary argued to the circuit court that this failure of proof was dispositive and it was entitled to a directed verdict because the only theory of medical malpractice—that Edge placed Dorothy on the scale—alleged in the Complaint was disproven at trial. We disagree that this sole issue was dispositive. Although Copeland specifically alleged in the complaint that Edge assisted Dorothy onto the scale, he further pled his claim for medical malpractice was based on Edge's alleged deviation from the standard of care in leaving Dorothy unattended on the scale, failing to take proper fall precautions, and lacking the degree of professional knowledge and skill required to supervise a frail patient in a triage room.

Copeland presented expert testimony establishing the standard of care Edge should have exercised in the triage room as well as the expert's opinion that Edge departed from such. Davies detailed the procedure for assisting a patient onto and off of a scale. She then addressed the facts of the case and opined Edge should have immediately assisted Dorothy upon her entry to the triage room and intervened when Deborah began to assist Dorothy onto the scale. Moreover, Davies testified Edge deviated from the standard of care because she was not at Dorothy's side to assist her onto and off of the scale or to provide the supervision necessary for patient safety and this failure was the reason Dorothy fell. Thus, Davies's testimony—along with Edge's admissions—presented a question for the jury regarding whether Edge's deviation from the standard of care was the proximate cause of Dorothy's fall.

Although Deborah's testimony and affidavit conflicted with Edge's testimony that Edge saw Deborah put Dorothy on the scale, such a credibility issue is not to be decided by the trial or appellate court—it is a question for a jury. *See Thomas*, 377 S.C. at 297, 659 S.E.2d at 255 ("When considering directed verdict and JNOV motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." (quoting *Welch,* 342 S.C. at 300, 536 S.E.2d at 419)).

Finally, we disagree with Carolina Pulmonary's argument that Davies's testimony was limited to the standard of care for the weighing process alone because this testimony more broadly addressed what Edge should have done in implementing a fall prevention protocol. Copeland was not required to present evidence that Edge assisted Dorothy onto the scale to present a question for the jury. Edge admitted she saw Deborah assisting Dorothy onto the scale but, despite this, continued to walk across the triage room to put down her chart, leaving the patient unattended. Viewing the evidence in the light most favorable to Copeland, a reasonable jury could have found Dorothy's fall was most probably the result of Edge's failure to intervene when she saw Deborah assisting Dorothy onto the scale and Edge's leaving Dorothy attended. Accordingly, the circuit court erred in granting Carolina Pulmonary's motion for a directed verdict.

**REVERSED AND REMANDED.**

**HUFF and WILLIAMS, JJ., concur.**