24071

Barbara BANKS, Individually and as Personal Representative of the Estate of Phaedra Banks, Appellant v. MEDICAL UNIVERSITY OF SOUTH CAROLINA, Fred W. Tecklenburg, Thomas P. Cochran, Henry B. Otherson, Jr., Martha S. Wright, Melinda K. Bailey and Helen Read, Respondents.

(444 S.E. (2d) 519)

Supreme Court

---

[2]There is a substantially similar note following Rule 50.

378

*Calvin A. Rouse*, North Augusta, *for appellant.*

*Lucinda Jenkins Haley* and *Stephen P. Groves*, Charleston, *for respondent Read.*

*M. Dawes Cooke, Jr.*, Charleston, *for respondent Medical University.*

*Elliott T. Halio*, Charleston, *for respondents Tecklenburg, Wright* and *Bailey.*

*E. Douglas Pratt-Thomas*, Charleston, *for respondents Cochran* and *Otherson.*

Heard March 3, 1994.

Decided May 23, 1994.

CHANDLER, Acting Chief Justice:

On appeal is an Order granting summary judgment to Respondents on Appellant's causes of action for breach of contract, battery, and deprivation of civil rights under 42 U.S.C.A. § 1983. We affirm in part and reverse in part.

## FACTS

Appellant Barbara Banks (Banks) brought her 8-year-old daughter, Phaedra, to Respondent Dr. Read's office on December 8, 1989. The child was suffering from respiratory distress and intense hip pain. Dr. Read had her transported and

admitted to the Medical University. Thereafter, she was examined and treated by Dr. Tecklenburg, Cochran, Otherson, Bailey and Wright. In seeking to diagnose the source of the child's infection, the doctors performed exploratory surgery, removed her appendix, administered cardiac resuscitation and blood transfusions. Tragically, final resuscitative efforts were unsuccessful and Phaedra died. The cause of death was "pulmonary emboli," blood clotting in the lungs caused by a protein C blood disorder.

Banks filed suit against the doctors and the Medical University, alleging wrongful death and survival actions, as well as actions for battery, deprivation of liberty interests, breach of duty, and breach of contract. Summary judgment was granted on the causes of action for batter, deprivation of liberty interests, and breach of contract. Banks retains viable actions for wrongful death and survival.

## ISSUES

1. Is breach of implied contract actionable in a medical malpractice case?

2. Does Banks have a cause of action for battery?

3. Was Dr. Read acting under color of state law?

4. Does Banks have a cause of action under 42 U.S.C.A. § 1983?

### A. *Breach of Contract*

Banks alleges that she has a viable cause of action for breach of implied contract based upon the doctors' alleged negligent performance of health care services. We disagree.

Although this Court has held that a patient may recover for breach of an *express* pretreatment warranty to effect a particular result,[1] the issue of whether an *implied* contract action may be maintained in a medical malpractice suit is novel to this court.

We now decline to recognize a cause of action for breach of *implied* contract arising from an alleged failure to provide adequate medical treatment. This allegation clearly sounds in tort, not in contract; therefore, Banks' remedy is an action for

---

[1] *Burns v. Wannamaker,* 281 S.C. 352, 315 S.E. (2d) 179 (Ct. App. 1984), *affirmed as modified* 288 S.C. 398, 343 S.E. (2d) 27(1985).

malpractice, not breach of contract. *See Monroe v. Long Island College Hospital,* 84 A.D. (2d) 576, 443 N.Y.S. (2d) 443 (N.Y. App. Div. 1981); *Cooper v. Edinbergh,* 97 Misc. (2d) 143, 410 N.Y.S. (2d) 962 (N.Y. 1978) (In absence of an express contract, breach of implied contract is redundant to the negligence cause of action.)

Moreover, South Carolina has followed the established tenet that a physician is not an insurer or guarantor of a beneficial result. *Starnes v. Taylor,* 272 N.C. 386, 158 S.E. (2d) 339 (1968). Accordingly, absent an *express* contract by the physician to render a definite result, an action for medical malpractice rests in tort, not contract.

Further, we note that as to Banks herself, the wrongful death statute[2] constitutes the exclusive remedy. *See Green v. Southern Railway Company,* 319 F. Supp. 919 (D.C.S.C. 1970).

### B. *Battery*

Banks is a Jehovah's Witness,[3] opposed to blood transfusions. She claims a viable cause of action for battery on the ground that no emergency existed justifying the administration of blood plasma to Phaedra.[4] We agree and reverse this issue.

"As a general proposition, except in the event of an emergency, a surgeon will be liable for an assault where he operates on a child without the consent of the latter's parents." 62 Am. Jur. (2d) *Physicians and Surgeons* § 178 at 308. *See e.g. Hook v. Rothstein,* 281 S.C. 541, 316 S.E. (2d) 690 (Ct. App. 1984). The Children's Code of South Carolina provides that parental consent is not required for an operation upon a minor if, in the opinion of the treating physician and a consulting physician, the operation is necessary to save the life of the child. S.C. Code Ann. § 20-7-290 (1985).

Banks concedes that she had no authority to withhold necessary medical treatment from her child even if such treatment was contrary to her religious views. *Jehovah's Witnesses in the State of Washington v. King County Hospital,*

---

[2] S.C. Code Ann. § 15-51-10 (1977).

[3] The daughter Phaedra was not a member of Jehovah's Witness.

[4] The question whether Banks gave consent for the transfusions is in dispute. For the purpose of summary judgment, the doctors concede that consent was not given.

278 F. Supp. 488 (D. Wash. 1967), *affirmed* 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed. (2d) 158, *reh'g den.* 391 U.S. 961, 88 S.Ct. 1844, 20 L.Ed. (2d) 874. However, she contends that the transfusions were not necessary and, therefore, her consent was required. She presented testimony of an expert witness, Dr. Paolini, to establish that there was no emergency justifying the transfusion of blood to Phaedra.

We find that Banks has presented an issue of material fact as to whether Phaedra was in a life-threatening situation which would have justified the administration of the transfusions without parental consent. Therefore, summary judgment was improperly granted on the battery cause of action.[5]

## C. *Dr. Read*

Dr. Read was granted summary judgment as to the § 1983 cause of action on the ground that she is not a "state actor." Banks contends this was error. We disagree.

To establish that a private individual is acting under color of state law, the central inquiry is whether the alleged infringement of federal rights is attributable to the state. *Rendell Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed. (2d) 418 (1982) (privately operated school performing public functions does not act under color of state law). This focuses on: (1) the nature of the relationship between the individual and the State; (2) the dependence of the individual on the state for funds; and (3) whether the individual performs a state function.

In *Calvert v. Sharp*, 748 F. (2d) 861 (4th Cir. 1984), the court held that a private physician who contracted with the State to treat inmates was not a state actor under § 1983. Moreover, in *Walker v. Pierce*, 560 F. (2d) 609 (4th Cir. 1977), it was held, "No decision has been advanced holding that a physician by simply practicing in such an institution [County hospital] acts under color of state law." 560 F. (2d) at 609. In *Downs v. Sawtelle*, 574 F. (2d) 1 (1st Cir. 1978) *cert. den.* 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed. (2d) 255 the court found that a private physician was a state actor since he was Chief of Staff of a

---

[5] Although the wrongful death is Banks' exclusive remedy, the battery cause of action may be maintained by Banks in her representative capacity for Phaedra under the survival statute. S.C. Code § 15-5-90 (1977).

state hospital, but the court noted that the doctor "was not simply a private physician making use of hospital facilities." 574 F. (2d) at 9.

Here, Dr. Read is a "voluntary faculty member" of M.U.S.C. with admitting privileges. Moreover, she has no contractual relationship with the hospital to either teach or treat patients. Under these facts, Dr. Read was not acting under color of state law, and summary judgment was proper.

### D. 42 U.S.C.A. § 1983

Banks contends that the doctors are liable under 42 U.S.C.A. § 1983 because they administered "unwarranted and unwanted" blood transfusions upon Phaedra without parental consent. We disagree.

42 U.S.C.A. § 1983 provides:

> Every person who, under the color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding to redress.

Banks does not have a right to withhold necessary medical treatment from her child. *King County Hospital, supra.* Accordingly, we find no constitutional "right, privilege, or immunity" of Banks upon which a § 1983 action could be predicated. *See Cone v. Nettles*, 308 S.C. 109, 417 S.E. (2d) 523 (1992) (Since no seizure occurred, there was no § 1983 violation.); *Cf. Peterson v. Davis*, 551 F. Supp. 137 (D.C. Md. 1982), *affirmed* 729 F. (2d) 1453 (failure to treat prisoner's medical problem gives rise to malpractice action, not civil rights violation). Whether the transfusions were, in fact, medically necessary will be determined in the negligence action.

Affirmed in part; reversed in part.

FINNEY, TOAL and MOORE, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur