566 S.E.2d 529

**Charles HARVEY, Appellant,**

v.

**Dr. Glen STRICKLAND and Surgical Associates
of South Carolina, Respondents.**

No. 25491.

Supreme Court of South Carolina.

Heard April 2, 2002.
Decided July 1, 2002.

304

306

Calvin A. Rouse, of Augusta, Georgia, for appellant.

Charles E. Carpenter, Jr., George C. Beighley, and S. Elizabeth Brosnan, all of Richardson, Plowden, Carpenter, and Robinson, of Columbia, for respondents.

WALLER, Justice:

Appellant, Charles Harvey, instituted this action against respondents, Dr. Glen Strickland and Surgical Associates (hereinafter Dr. Strickland), alleging breach of contract, lack of informed consent, medical malpractice, and medical battery. Harvey is a Jehovah's Witness; his claims stem from Harvey's receipt of unwanted blood transfusions two days after elective carotid artery surgery. The trial court granted directed verdicts for respondents on all four causes of action. We reverse.

## FACTS

In November 1996, diagnostic testing revealed a blockage in Harvey's carotid artery. Dr. Strickland recommended a carotid endarterectomy. On November 4, 1996, in anticipation of surgery, Harvey signed written forms entitled "Refusal of Treatment/Release from Liability" and "Consent to Operation." The documents indicate that he refused to have blood or blood products given to him, and that he fully understood the attendant risks. They state that "in all probability, my refusal for such treatment, medical intervention, and/or procedure (may)(will) seriously imperil my health or life." The release relieves the attending physician, Lexington Medical Center, and its agents and employees from any and all claims of whatsoever kind or nature. Hospital forms list Harvey's

mother, Julia, as his emergency contact. On January 14, 1997, the day before his surgery, Harvey signed another consent to operation form indicating that he did "not give permission to the doctor to use blood or blood products if necessary." However, Dr. Strickland testified that although he knew Harvey was a Jehovah's Witness, Harvey had told him he would consider a blood transfusion

Harvey's surgery was performed January 15, 1997. Although the surgery initially appeared to have gone well, Harvey developed a blood clot and had a stroke while in the recovery room. Because Harvey was unconscious, hospital personnel located his mother in the waiting room and obtained her permission to perform a CT scan and an arteriogram. A second surgery was performed and more blood clots were removed along the side of the carotid artery. Harvey was moved to the intensive care unit (ICU). He was intubated that evening by the on-call emergency room physician after the ICU nurse discovered Harvey was having trouble breathing, and his blood pressure was 200/110. The next day, Harvey began bleeding from the surgical site at his neck; he had lost approximately 30% of his blood volume, and his heart rate was extremely high. Dr. Strickland was concerned that if they could not get the heart rate down, Harvey would have a heart attack and die. When his hemoglobin level reached 8, Dr. Strickland recommended a blood transfusion to Harvey's mother, Julia, who initially declined due to her son's faith as a Jehovah's Witness. Ultimately, Julia consented to giving Harvey two units of packed red blood cells. Harvey recovered fully from the procedures.

Harvey instituted this suit in July 1998 alleging medical malpractice, medical battery, breach of express contract, and lack of informed consent.[1] The trial court directed a verdict for Dr. Strickland on the breach of contract claim at the close of Harvey's case; the court directed a verdict for Dr. Strickland on the lack of informed consent claim at the close of the defense's presentation of evidence.

█  The medical malpractice and medical battery claims were submitted to the jury. After four hours of deliberations,

1. Lexington Medical Center was initially named as a defendant but was voluntarily dismissed in March 1999.

the jury sent out a note indicating it could not agree. The jury was excused for the day, but brought back the next morning for further deliberations after an *Allen* charge. After the jury was sent out in the morning, counsel for Harvey requested if there was some way, in the event of a mistrial, for the court to get "all these thorny issues" before an appellate court without re-trying the case. During this discussion, the jury again returned, indicating it could not agree. The court then granted Dr. Strickland a directed verdict on the malpractice and battery claims and dismissed the jury.[2] Harvey appeals.

## ISSUES

1. Did the trial court err in granting a directed verdict on Harvey's claims?

2. Did the trial court err in denying Harvey's motion to amend his complaint?

3. Did the trial court improperly exclude testimony of a hospital liaison worker?

## 1. DIRECTED VERDICT

Harvey contends the trial court erred in granting a directed verdict on his claims. We agree.

In ruling on a motion for directed verdict, the trial court is required to view the evidence and the inferences which reasonably can be drawn therefrom in the light most favorable to the party opposing the motion and to deny the motion where either the evidence yields more than one inference or its inference is in doubt. *Strange v. South Carolina Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994). When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence. *Creech v. South Carolina Wildlife and Marine Resources Dep't*, 328 S.C. 24, 491 S.E.2d 571

---

2. We agree with Harvey's contention that rather than granting a directed verdict, the proper procedure in cases of jury deadlock is to grant a mistrial. However, as Harvey's request to the trial court contributed to the error, we do not reverse on this basis.

(1997). "In essence, we must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor." *Bultman v. Barber*, 277 S.C. 5, 7, 281 S.E.2d 791, 792 (1981). "If the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury." *Quesinberry v. Rouppasong*, 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998).

### a. Implied Consent

■ Citing *Hook v. Rothstein*, 281 S.C. 541, 316 S.E.2d 690 (Ct.App.), *cert denied* 283 S.C. 64, 320 S.E.2d 35 (1984), Dr. Strickland contends the subsequent unplanned emergency required he seek the consent of Harvey's mother for further treatments. Accordingly, as he sought and obtained Harvey's mother's consent to the blood transfusion, he contends he cannot be held liable as a matter of law. We disagree.

In *Hook*, the Court of Appeals first recognized that the doctrine of implied consent applies to physicians in South Carolina. Under that doctrine, a physician has a duty to disclose to a patient the diagnosis, risks, benefits, alternatives, etc., of any procedures the doctor proposes to perform. *Hook*, however, indicates such information is to be given to "a patient of sound mind, in the absence of an emergency which warrants immediate medical treatment." 281 S.C. at 547-48, 316 S.E.2d at 694-95. Accordingly, as Harvey was unconscious, and an emergency situation presented, Dr. Strickland asserts he was obligated to seek his mother's consent to the blood transfusion. We disagree.

The right to be free of unwanted medical treatment has long been recognized in this country. More than one-hundred years ago, in *Union Pacific Ry. Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.Ed. 734 (1891), the United States Supreme Court perceived that "no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person." In *Schloendorff v. New York Hosp.*, 211 N.Y. 125, 105 N.E. 92, 93 (1914), Justice Cardozo stated, "every human being of adult years and sound mind has a right to determine what shall be done with his own body...." More recently, it has been noted that "the individual's right to make

decisions vitally affecting his private life according to his own conscience ... is difficult to overstate ... because it is, without exaggeration, the very bedrock on which this country was founded." *Wons v. Public Health Trust,* 500 So.2d 679, 687 (Fla.Dist.Ct.App.1987), *aff'd* 541 So.2d 96 (Fla.1989). The right to control the integrity of one's own body spawned the doctrine of informed consent. *In re Duran,* 769 A.2d 497 (Pa.Super.2001). Accordingly, the United States Supreme Court has held that a competent adult patient has the right to decline any and all forms of medical intervention, including lifesaving or life-prolonging treatment. *Cruzan v. Director, Missouri Dep't of Health,* 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990).

Our General Assembly has recognized this right to be free of unwanted medical intrusion in the South Carolina Adult Health Care Consent Act (Consent Act), S.C.Code Ann. § 44–66–10 et seq. (Supp.2001). Section 44–66–60 of the Consent Act states, in pertinent part:

> (A) Unless the patient, while able to consent, has stated a contrary intent to the attending physician or other health care professional responsible for the care of the patient, this chapter does not authorize the provision of health care to a patient who is unable to consent if the attending physician or other health care professional responsible for the care of the patient has **actual knowledge that the health care is contrary to the religious beliefs of the patient.**

> (B) This chapter does not authorize the provision of health care to a patient who is unable to consent if the attending physician or other health care professional responsible for the care of the patient has **actual knowledge that the health care is contrary to the patient's unambiguous and uncontradicted instructions expressed at a time when the patient was able to consent.**

(Emphasis supplied). Clearly, these sections reveal a legislative intent that a patient's wishes against medical treatment or intervention, when made known to a physician prior to surgery, must be followed by the attending physician.

Here, Harvey signed numerous forms indicating he was a Jehovah's Witness and did not wish to receive blood. In particular, on the date of his initial appointment with Dr.

Strickland, Harvey signed a "Refusal of Treatment/Release from Liability" form which specifically which states:

> I, *Charles Harvey*, refuse *to have blood or any blood products given to me.*
>
> The risks attendant to my refusal have been fully explained to me and I fully understand that my chances for gaining normal health are seriously reduced, and that in all probability, my refusal for such treatment, medical intervention, and/or procedure (may) (will) seriously imperil my health or life.
>
> With the understanding, I hereby release the attending physician, the Lexington Medical Center and its employees and their respective agents, heirs, executors, administrators and assigns from any and all claims of whatsoever kind of any nature.

Given this evidence demonstrating Harvey's desire not to receive blood, we find Dr. Strickland's argument that he was under an obligation to seek Julia Harvey's consent unavailing.

However, in light of Dr. Strickland's testimony to the effect that he knew Harvey was a Jehovah's Witness, and that although Harvey never said "yes" to a blood transfusion, Harvey had told him he would consider a blood transfusion, we find the implied consent issue was a matter for the jury. Accordingly, we hold the trial court erred in granting a directed verdict on Harvey's implied consent cause of action.

## B. Breach of Contract

Harvey next asserts the trial court erred in granting a directed verdict to Dr. Strickland on his breach of contract claim. We agree.

Here, the documents Harvey relies upon to create an express contract are 1) a "Doctor's Survey Reply" signed by Dr. Strickland which indicates he is willing in principle to offer medical treatment without the use of blood or blood products, 2) a Refusal of Treatment form, signed by Harvey on 11/04/96, indicating he did not wish to receive blood, 3) a Consent to Operation form for an "arch and four vessel arteriogram" signed by Harvey on 11/04/96, indicating he did not give permission to the doctor to use blood or blood products, 4) a Consent to Operation form for a Carotid Endarterectomy

signed by Harvey on 1/14/97, indicating he did not give permission to the doctor to use blood products, and 5) a Refusal of Transfusion, indicating Harvey is a Jehovah's Witness and refuses blood transfusion and absolves the hospital of liability. Harvey also testified that it was his understanding that "he [Dr. Strickland] could do the operation without— bloodless transfusions, so when I asked him about it, he said that that wouldn't be necessary. It wouldn't be necessary for the blood transfusion, so there was no more said."

We have previously recognized that an action may be maintained for breach of an express pre-treatment warranty to effect a particular result. *Banks v. Medical University of South Carolina*, 314 S.C. 376, 444 S.E.2d 519 (1994); *Burns v. Wannamaker*, 281 S.C. 352, 315 S.E.2d 179 (Ct.App.1984), *aff'd as modified* 288 S.C. 398, 343 S.E.2d 27 (1986).

Viewing the above evidence, as we must, in the light most favorable to Harvey, we find it was for the jury to determine whether an express contract was created. *Davenport v. Cotton Hope Plantation Horizontal Property Regime*, 333 S.C. 71, 508 S.E.2d 565 (1998) (when Court reviews grant of directed verdict, evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonprevailing party. If the evidence is susceptible of more than one reasonable inference, case should be submitted to the jury). Accordingly, the trial court's grant of a directed verdict is reversed.

### c. Medical Malpractice/Medical Battery

South Carolina recognizes a medical malpractice cause of action stemming from a lack of informed consent. *Hook v. Rothstein, supra.* Similarly, we have recognized that there may be a viable cause of action for medical battery as the result of failing to obtain proper consent. *Banks v. Medical Univ. of South Carolina, supra.*

We find the trial court erred in granting Dr. Strickland a directed verdict as to these causes of action. Harvey presented expert testimony that his hemoglobin level was not critical at the time of the transfusion, and that there was not really an emergency situation. The expert also opined that Harvey did not really need a transfusion, and that alternative

bloodless procedures were available. Given this testimony, we find the issues of medical battery and medical malpractice were for the jury.

## 2. MOTION TO AMEND

Harvey asserts the trial judge committed reversible error in refusing to allow him to amend his complaint to conform to the evidence while the jury was deliberating. We disagree.

Harvey's complaint alleged only that Dr. Strickland was negligent and/or breached obligations to him in giving him blood products without his consent and contrary to his wishes. The trial centered around these allegations.[3] During the jury's deliberations, Harvey moved to amend his complaint to include allegations of medical negligence stemming from the "closed off airway" incident; he wanted to allege that it was a breach of the standard of care to let his airway be closed off requiring him to be intubated. Harvey asserted that Dr. Strickland had testified that the intubation was not a breach of the standard of care, such that the issue had been tried by consent.

The circuit court is to freely grant leave to amend when justice requires and there is no prejudice to any other party. Rule 15, SCRCP; *Foggie v. CSX Transp., Inc.*, 313 S.C. 98, 431 S.E.2d 587 (1993). A motion to amend is addressed to the sound discretion of the trial judge, and the party opposing the motion has the burden of establishing prejudice. *Id.* Amendments to conform to the proof should be liberally allowed when no prejudice to the opposing party will result. *Soil & Material Eng'rs, Inc. v. Folly Assoc.*, 293 S.C. 498, 361 S.E.2d 779 (Ct.App.1987). This decision is within the trial court's discretion. *Id.*

Given that the jury was in the process of deliberating at the time counsel moved to amend, we find no abuse of discretion in the trial court's refusal of the amendment. *Accord Dunbar v. Carlson*, 341 S.C. 261, 533 S.E.2d 913 (Ct.App.2000)(court

---

3. In fact, at one point, the trial court specifically stated, "There are no allegations of any kind of negligence or anything else or any other treatment, right?" to which counsel for Harvey responded affirmatively.

will not find implied consent to try an issue if all of the parties did not recognize it as an issue during trial, even though there is evidence in the record—introduced as relevant to some other issue—which would support the amendment).

### 3. EXCLUSION OF LIAISON'S TESTIMONY

■ Harvey also asserts reversible error in the trial court's exclusion of portions of the testimony of Richard Culler, a hospital liaison committee worker. The liaison committee worked with patients and doctors to attempt to prevent Jehovah's Witness patients from receiving unwanted blood transfusions. The trial court sustained Dr. Strickland's objection to any testimony by Culler as to what specific resources were available at the Lexington Medical Center to someone who did not want to receive blood. However, Culler was able to testify that there were resources available at the hospital to assist in the treatment of patients without use of blood products.

Given that Culler was able to testify as to resources generally available, we find no reversible error in the limitation of his testimony. *Gamble v. Int'l Paper Realty Corp.*, 323 S.C. 367, 373, 474 S.E.2d 438, 441 (1996)(admission or exclusion of evidence is a matter within the sound discretion of the trial court and absent clear abuse, will not be disturbed on appeal).

Moreover, we find any evidence as to the availability and appropriateness of "cell saver" technology, about which Culler proposed to testify, would have required expert testimony. Accordingly, the trial court did not err in refusing the proffered testimony as Culler was not qualified as an expert. *Payton v. Kearse*, 329 S.C. 51, 60–61, 495 S.E.2d 205, 211 (1998)(qualification of witness as an expert and the admissibility of his or her testimony are matters left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of that discretion and prejudice to the opposing party).

### CONCLUSION

■ The trial court's grant of a directed verdict is reversed. We affirm the trial court's rulings limiting the testimony of the liaison, and denying Harvey's motion to amend

his complaint. The matter is reversed and remanded for a new trial.[4]

**REVERSED AND REMANDED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

**4.** Dr. Strickland asserts, as an additional sustaining ground, directed verdicts were appropriate as Harvey suffered no legally cognizable injury. We disagree. We find the matter of damages was for the jury's determination. *See Stevens v. Allen,* 342 S.C. 47, 536 S.E.2d 663 (2000) (recognizing that every violation of a legal right imports damage and authorizes the maintenance of an action and the recovery of at least nominal damages, regardless of whether any actual damage has been sustained). *See also Boan v. Blackwell,* 343 S.C. 498, 541 S.E.2d 242 (2001) (analyzing damages for "loss of enjoyment of life" and "pain and suffering"); *Gathers v. Harris Teeter,* 282 S.C. 220, 317 S.E.2d 748 (Ct.App.1984)(physical injury is not an element of a battery); *Tisdale v. Pruitt,* 302 S.C. 238, 394 S.E.2d 857 (Ct.App.1990)(evidence that patient was denied right to make an informed consent to procedure, suffered pain from the procedure and suffered emotional injury were sufficient to present jury issue on whether damages were sustained and proximately caused by doctor's wrongful conduct).