656 S.E.2d 355

**Nitus Joanne LINOG, Appellant,**

v.

**Mark YAMPOLSKY, D.D.S., and Eloise Bradham, M.D., Respondents.**

**No. 26419.**

Supreme Court of South Carolina.

Heard Oct. 17, 2007.

Decided Jan. 14, 2008.

Brooks Roberts Fudenberg, of Charleston, and Geoffrey H. Waggoner, of Mt. Pleasant, for Appellant.

Andrew Steven Halio, of Halio & Halio, of Charleston, for Respondent Mark Yampolsky.

Todd W. Smyth and Neil D. Thomson, both of Haynsworth Sinkler Boyd, of Charleston, for Respondent Eloise Bradham.

Marvin D. Infinger and Lydia B. Applegate, both of Haynsworth Sinkler Boyd, of Charleston, for Amicus Curiae South Carolina Medical Association.

Chief Justice TOAL.

This is an appeal from a grant of summary judgment in favor of Respondents Dr. Mark Yampolsky and Dr. Eloise Bradham as to Appellant Nitus Linog's ("Appellant") claim for medical battery. Appellant based her claim on her purported revocation of consent to a dental procedure during the surgery and while under anesthesia. The trial court found no South Carolina precedent recognizing medical battery based on withdrawal of consent, but ruled that even if South Carolina law permitted such a cause of action, Appellant failed to provide any expert testimony. Because we hold that no cause of action exists for medical battery in South Carolina, we affirm.

### FACTUAL/PROCEDURAL BACKGROUND

After several consultations, Dr. Yampolsky, a periodontist, recommended that Appellant receive osseous gum surgery, a highly invasive dental procedure. The procedure was scheduled to last approximately four hours and include all four quadrants of Appellant's mouth. Due to her extraordinary fear of dentists, Appellant elected to undergo the procedure with intravenous sedation. Dr. Bradham, an anesthesiologist, administered a combination of four anesthetic agents prior to and during the procedure. However, Dr. Bradham's attempt to sedate Appellant was not entirely successful, and the record reveals that Appellant would turn her head and mumble throughout surgery. As a result, Dr. Yampolsky decided to

terminate the procedure after three and a half hours and with only one quadrant completed.

Appellant filed a medical malpractice action against Drs. Yampolsky and Bradham, alleging that she suffered a herniated disc during the procedure. Discovery in the action proceeded, and in depositions, both doctors testified that during the procedure, Appellant continued to intermittently move her head and otherwise disrupt the procedure, thereby making the surgery more difficult to complete. Appellant then amended her complaint to include a cause of action for medical battery, contending that the doctors' deposition testimonies showed that she withdrew her consent during the procedure.

Subsequently, Respondents filed a motion for summary judgment as to both causes of action. The trial court granted the motion as to the medical malpractice claim based solely on the fact that Appellant failed to identify an expert witness who would testify to support her claim. Additionally, the trial court granted summary judgment as to the medical battery claim. Specifically, the trial court found no legal precedent in South Carolina allowing a claim for medical battery based on a patient's withdrawal of consent. The court alternatively held that even if South Carolina recognized such a claim, Appellant failed to provide expert testimony establishing the relevant standard of care and showing that Appellant withdrew her consent.

We certified this case pursuant to Rule 204(b), SCACR, and Appellant raises the following issue for review:

Did the trial court err in granting summary judgment regarding Appellant's medical battery claim?

## STANDARD OF REVIEW

■■ Summary judgment is appropriate where there is no genuine issue of material fact and it is clear that the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Koester v. Carolina Rental Ctr.*, 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994). The mere fact that a case involves a novel issue does not render sum-

mary judgment inappropriate. *Houck v. State Farm Fire Cas. Ins. Co.,* 366 S.C. 7, 11, 620 S.E.2d 326, 329 (2005).

## LAW/ANALYSIS

Appellant argues that South Carolina should recognize a medical battery claim based on revocation of consent and that expert testimony should not necessarily be required in proving such claim. We disagree.

South Carolina courts have specifically addressed issues involving informed consent in the context of medical care. In *Hook v. Rothstein,* the court of appeals explicitly held that lack of informed consent cases fall under the medical malpractice framework. 281 S.C. 541, 553, 316 S.E.2d 690, 698 (Ct.App.1984) (holding a patient must show that, based on expert testimony of the standard of care, the physician provided insufficient information to enable the patient to make an intelligent and informed decision). Additionally, in *Harvey v. Strickland,* 350 S.C. 303, 312, 566 S.E.2d 529, 534 (2002), we held that South Carolina recognizes a medical malpractice claim stemming from lack of informed consent.

On the other hand, although not entirely foreign to South Carolina jurisprudence, our courts have not explored medical battery as thoroughly. In *Hook,* the court of appeals mentioned medical battery and explained "the battery theory is applicable either where the physician performs a procedure to which the patient has not consented or where the patient gives permission to perform one type of procedure and the physician performs another." *Hook,* 281 S.C. at 558, 316 S.E.2d at 700–01. Similarly, in both *Harvey v. Strickland* and *Banks v. Medical University of South Carolina,* we reversed the trial court's grant of summary judgment as to the patients' medical battery claims and noted that "we have recognized that there may be a viable cause of action for medical battery as the result of failing to obtain proper consent." *Harvey,* 350 S.C. at 312, 566 S.E.2d at 534 (citing *Banks,* 314 S.C. 376, 444 S.E.2d 519 (1994),).

Turning to the instant case, we must determine whether South Carolina should recognize a separate and independent cause of action for medical battery, or whether such theories

of liability are more properly analyzed under alternative and well-established causes of action.

Under our jurisprudence, an injured patient may bring a medical malpractice claim against a physician where the physician's negligence in rendering medical care proximately causes the patient's injury. *Guffey v. Columbia/Colleton Reg'l Hosp., Inc.*, 364 S.C. 158, 163, 612 S.E.2d 695, 697 (2005). A patient alleging medical malpractice must provide evidence, through expert testimony, showing (1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the physician's field of medicine under the same or similar circumstances, and (2) that the physician departed from the recognized and generally accepted standards. *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 248, 626 S.E.2d 1, 4 (2006). Alternatively, it is possible that a patient might sustain an injury as a result of a physician's intentional acts that are unrelated to medical care. In these cases, a patient may bring a civil battery claim against a physician where the physician commits an offensive touching outside of the medical scope. *Honea v. Prior*, 295 S.C. 526, 369 S.E.2d 846 (Ct.App.1988) (upholding a jury verdict for assault and battery against a physician who sexually assaulted his patient).

In light of the availability of a medical malpractice claim or a civil battery claim to any patient that is injured by a physician, we believe medical battery would constitute an unnecessary and superfluous cause of action. We see little need to recognize an additional cause of action related to tortious injuries arising out of interactions with medical providers when the tort of medical malpractice fully covers all acts performed in relation to medical services and when the remaining area of private tort law applies to acts not related to medical services. Accordingly, we limit the holdings of *Hook, Harvey*, and *Banks* to the extent that they indicate that our State recognizes medical battery and hold that no independent cause of action for medical battery exists in South Carolina. We further hold that in order for a patient to pursue a claim stemming from a situation involving lack of or revocation of consent, a physical touching within the medical context, and a resulting injury, the patient must bring this

claim under the medical malpractice framework.[1] That is, a patient must show through expert testimony that the physician deviated from the relevant standard of care in failing to obtain proper consent, unless the subject matter lies within common knowledge. *See David,* 367 S.C. at 248, 626 S.E.2d at 4 (holding that a plaintiff bringing a medical malpractice suit must provide expert testimony unless the subject matter lies within the ambit of common knowledge). It is important to note that our holding in no way implies that a patient must produce expert testimony in a civil battery claim where the touching occurs outside of the medical context. We believe courts are certainly able to distinguish between a physician's professional services and acts that fall outside the medical scope. *See South Carolina Med. Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry,* 291 S.C. 460, 463, 354 S.E.2d 378, 380 (1987) (holding that the scope of professional services does not include all forms of a physician's conduct simply because he is a physician).

In this case, Appellant clearly sustained her alleged injuries while receiving treatment within the medical context, and therefore, the trial court properly analyzed Appellant's claim as a claim for medical malpractice. Accordingly, because Appellant failed to produce any expert testimony that Drs. Yampolsky and Bradham deviated from the standard of care, we hold that the trial court properly granted Respondent's motion for summary judgment.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's decision.

MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.

---

1. We express serious doubts as to whether a patient could ever revoke consent to a medical procedure while under anesthesia or some other method of significant sedation. For this reason expert testimony as to the standard of care ought to be critically important in cases of this type.