**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1117

CHARLES BENJAMIN DICKERSON, a/k/a Ben, on behalf of himself
and all others similarly situated,

Plaintiff - Appellant,

and

JOHN HOLLMAN, on behalf of himself and all others similarly
situated,

Plaintiff,

v.

TLC THE LASER EYE CENTER INSTITUTE, INC.; TLC THE LASER
CENTER CAROLINA, INC.; TLC THE LASER CENTER MADISON, INC.;
TLC LASER EYE CENTERS OKLAHOMA CITY; TLC THE LASER CENTER
TRI-CITIES, INC.; TLC THE LASER CENTER MASSACHUSETTS, INC.;
TLC THE LASER CENTER BREA, INC.; TLC LASER EYE CENTERS
CLEVELAND; TLC LASER EYE CENTERS COLUMBUS; TLC THE LASER
CENTER BOCA RATON, INC.; TLC LASER EYE CENTERS PITTSBURGH;
TLC LASER EYE CENTERS FARGO; VALLEY LASER EYE CENTER, LLC;
TLC LASER EYE CENTERS TULSA; TLC LASER EYE CENTERS EDINA;
TLC THE LASER CENTER INDIANA, LLC; TLC THE LASER CENTER
INSTITUTE FT. LAUDERDALE, d/b/a TLC Ft. Lauderdale, a/k/a
TLC The Laser Center Institute; TLC THE LASER CENTER
INSTITUTE, INC.-DENVER, d/b/a TLC Denver, a/k/a TLC The
Laser Center Institute, Inc.; TLC THE LASER CENTER INSTITUTE
INC.-ATLANTA, d/b/a TLC Atlanta, a/k/a TLC The Laser Center
Institute, Inc.; TLC THE LASER CENTER INSTITUTE, INC.-
MANHATTAN, d/b/a TLC Manhattan, a/k/a TLC The Laser Center
Institute, Inc.; TLC THE LASER CENTER INSTITUTE, INC.-GARDEN
CITY, d/b/a TLC Garden City, a/k/a TLC The Laser Center
Institute, Inc.; TLC THE LASER CENTER INSTITUTE, INC.-
TORRANCE, d/b/a TLC Torrance, a/k/a TLC The Laser Center
Institute, Inc.; TLC THE LASER CENTER NORTHEAST, INC.-NORTH
JERSEY, d/b/a TLC North Jersey, a/k/a TLC The Laser Center
Northeast, Inc.; TLC LASER CENTER NORTHEAST, INC.-ROCKVILLE,

d/b/a TLC Rockville, a/k/a TLC Laser Center Northeast, Inc.; TLC THE LASER CENTER INSTITUTE, INC.-WHITE PLAINS, d/b/a TLC White Plains, a/k/a TLC The Laser Center Institute, Inc.; TLC MIDWEST EYE LASER CENTER, INC.-CHICAGOLAND, d/b/a TLC Chicagoland, a/k/a TLC Midwest Eye Laser Center, Inc.; TLC THE LASER CENTER NORTHEAST, INC.-BIG SKY, d/b/a TLC Big Sky, a/k/a TLC The Laser Center Northeast, Inc.; TLC THE LASER CENTER INSTITUTE, INC.-CHARLESTON, d/b/a TLC Charleston, a/k/a TLC The Laser Center Institute, Inc.; TLC THE LASER CENTER INSTITUTE, INC.-SAN ANTONIO, d/b/a TLC San Antonio, a/k/a TLC The Laser Center Institute, Inc.; TLC THE LASER INSTITUTE-TAMPA, d/b/a TLC Tampa, a/k/a TLC The Laser Institute; DAVID KOHLER, OD, Individually and in their capacity as Clinical Director for TLC The Laser Center Institute, Inc.; MELISSA MELOTT, OD, Individually and in their capacity as Clinical Director for TLC The Laser Center Institute, Inc. ; DEREK VAN VEEN, OD, Individually and in their capacity as Clinical Director for TLC The Laser Center Institute, Inc.; CYNTHIA YEAGER, OD, Individually and in their capacity as Clinical Director for TLC the Laser Center Institute, Inc.; JODI ABRAMSON, MD; ALBERTO ARAN, MD; ROBERT ARFFA, MD; DAVID K. AYMOND, MD; DAVID BOES, MD; STAN BRAVERMAN, MD; ERIC DONNENFELD, MD; MARTIN FOX, MD; DAVID HUNTER, MD; JEFFREY MACHAT, MD; JOHN OSTER, MD; GEORGE PARDOS, MD; EDWARD PERRAUT, MD; LOUIS PROBST, MD; RANDALL RABON, MD; JEFF ROBIN, MD; ROY RUBINFELD, MD; STEPHEN SLADE, MD; MARK SPEAKER; NANCY TANCHEL, MD; GREGORY TEMAS, MD; STEWART TERRY, MD; MARK E. WHITTEN, MD; LARRY WOMACK, MD; WENDELL WONG, MD; JONATHAN WOOLFSON, MD; BRIAN ANDREW, Esq.; STACEY ANNE LERUM; BOB MAY, Esq.; JOHN POTTER, MD,

                    Defendants - Appellees.

                    _____


Appeal from the United States District Court for the District of South Carolina, at Greenville.   J. Michelle Childs, District Judge.  (6:10-cv-00685-JMC)

                    _____

Submitted:  June 20, 2012            Decided:  August 15, 2012

                    _____

Before GREGORY, WYNN, and THACKER, Circuit Judges.

                    _____

Affirmed by unpublished per curiam opinion.

Paul S. Landis, FAYSSOUX LAW FIRM, PA, Greenville, South Carolina; Douglas F. Patrick, Sr., Stephen R. H. Lewis, COVINGTON, PATRICK, HAGINS, STERN & LEWIS, PA, Greenville, South Carolina, for Appellant. W. Howard Boyd, Jr., Ronald G. Tate, Jr., Luanne Lambert Runge, GALLIVAN, WHITE & BOYD, PA, Greenville, South Carolina; H. Donald Sellers, Christopher B. Major, HAYNSWORTH, SINKLER & BOYD, PA, Greenville, South Carolina; Robert H. Hood, James B. Hood, Deborah H. Sheffield, HOOD LAW FIRM, Charleston, South Carolina; David H. Batten, Charles H. Foppiano, BATTEN LEE, PLLC, Cary, North Carolina; James F. Rogers, Cory E. Manning, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Columbia, South Carolina; Lee C. Weatherly, CARLOCK, COPELAND, SEMLER & STAIR, LLP, Charleston, South Carolina; Jack G. Gresh, HALL, BOOTH, SMITH & SLOVER, PC, Sullivan's Island, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Charles Benjamin Dickerson appeals the district court's grant of motions to dismiss the first amended complaint ("FAC") filed by Appellees TLC Lasik Centers, TLC Clinical Directors, TLC LASIK Surgeons, and TLC Management (collectively, "the Providers"). Dickerson is the class representative in an action alleging violations of the Racketeer Influenced and Corrupt Organization Act ("RICO") and requesting declaratory and injunctive relief regarding his and the putative class members' medical records that were allegedly concealed and converted by the Providers. Dickerson alleged that the Providers participated in an elaborate fraudulent scheme to conceal their medical malpractice. For the following reasons, we affirm the district court's grant of the motions to dismiss.

I.

Dickerson challenges the district court's determination that his RICO claim is barred by the statute of limitations. Generally, "a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint, . . . cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). However, in rare cases, courts may

4

determine the merits of an affirmative defense at this stage in the litigation if "all facts necessary to the affirmative defense clearly appear[] on the face of the complaint." Id. (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in the original).

The RICO statute does not provide a limitations period for civil actions, however, the Supreme Court has determined that a four-year statute of limitations applies. Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156 (1987). Further, the Supreme Court has established that the discovery-of-injury accrual rule applies to civil RICO actions. Rotella v. Wood, 528 U.S. 549, 556 (2000). Under this rule, the statute of limitations will begin to run from the date when the plaintiff knew or should have known of the existence of a RICO injury. Id.

Dickerson alleged several RICO injuries, which include conversion of his medical records and payments for unnecessary surgeries and treatment. With respect to the injury arising from payments for unnecessary surgeries and treatment, the FAC is silent regarding when Dickerson's first Lasik surgery occurred and when he sought additional treatment from the Providers. However, the FAC does allege several dates in which the Providers converted his medical records by faxing and mailing his records between themselves as part of the

5

racketeering scheme beginning in February 1999 and continuing through May 2005. J.A. 112-13. The FAC also alleges that the mail fraud was committed without Dickerson's knowledge or consent and that the Providers continue to conceal and convert the medical records to date. The district court concluded that based upon these dates alleged in the FAC, Dickerson's RICO claim "certainly accrued by May 2005," since the action was initiated in March 2010, and Dickerson's claims were not raised until May 2010. J.A. 311.

That the conversion of the medical records occurred on those dates does not clearly indicate that Dickerson had or should have had notice that the conversions were taking place. On the face of the FAC, there is no indication from the allegations that Dickerson should have known that his medical records were being converted over this period of time. Indeed, the FAC is explicit that the conversion of the records was kept secret to conceal his true diagnosis. See e.g., J.A. 116. Given that there is no allegation that demonstrates Dickerson should have known that the Providers were converting his medical records at a date that would lead to the conclusion that the limitations period has expired, the statute of limitations defense was not clearly present on the face of the FAC, and the district court erred in rendering that conclusion. As a result, the Court need not consider Dickerson's alternative argument

6

that the limitations period should be equitably tolled due to the Providers' fraudulent conduct.

## II.

Next Dickerson challenges the district court's dismissal of his civil RICO claim. To establish a RICO claim, Dickerson must sufficiently allege facts that if accepted as true demonstrate that the Providers engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima v. Imrex Co., 473 U.S. 479, 496 (1985). Dickerson can only recover if he shows that his injury caused by the RICO violation damaged his business or property. Id. See also, 18 U.S.C. § 1964(c). Thus, any allegation of personal injuries and losses from those injuries will not be considered injuries to business or property under the act. Bast v. Cohen, Dunn & Sinclair, P.C., 59 F.3d 492, 495 (4th Cir. 1995). The district court concluded that the FAC sufficiently alleged a pattern of racketeering activity and the existence of an enterprise. See J.A. 296-300. It dismissed the RICO claim, however, because it found that the FAC did not allege a cognizable injury caused by the RICO activity to Dickerson's business or property. J.A. 306.

In the FAC, Dickerson pled several injuries to his and the class members' properties caused by the Providers' alleged

7

RICO activity.  With respect to the first injury, the district court correctly concluded that costs and attorney fees are automatically granted in a successful RICO case, and thus these damages are separate from the damages arising from the injury to a plaintiff's business or property.  See 18 U.S.C. § 1964(c).  Similarly, the district court correctly concluded that, with respect to the second injury, the money spent on subsequent surgeries and treatment were damages stemming from personal injuries derived from the Providers' medical malpractice and not -- as Dickerson alleged -- damages arising from an injury to his property.[1]

---

[1]  Relatedly, Dickerson argues that the district court ignored allegations in the FAC regarding fees he and the class members had to pay to enter into the LTCs.  In the FAC, Dickerson alleged that the LTCs were used to induce prospective patients to the Providers by guaranteeing lifetime vision care for patients that would cover "any additional LASIK surgery needed and any treatment for vision related problems associated with or caused by the LASIK surgery performed under the LTC."  J.A. 95-96.  Dickerson contends that the LTCs were ultimately used by the Providers to further their fraudulent scheme and that these contracts were no longer honored once the Providers believed that Dickerson and class members' claims for medical malpractice had expired.  While these allegations were part of the "Factual Background" section of the FAC, Dickerson did not allege that these fees should be considered property for the RICO claim nor did he list the fees as compensatory damages stemming from the RICO violation.  Thus, even when reading the FAC in a light favorable to Dickerson, the FAC simply does not contain pleadings that suggest that these fees should be considered an injury to property as required for the RICO claim.

Finally, with respect to the third injury, the district court concluded that under South Carolina law, Dickerson had an "intangible property interest" in his medical information, yet conversion of this interest was not a legally cognizable action. J.A. 303. As a result, it held that Dickerson could not demonstrate any "concrete" or "quantifiable" injury to his business or property.[2] J.A 303.

Under South Carolina law, the crime of conversion "is the unauthorized assumption and exercise of the right of ownership over goods or person or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights. To establish the tort of conversion, it is essential that the plaintiff establish either title to or right to the possession of the personal property." Regions Bank v. Schmauch, 582 S.E.2d 432, 442 (S.C. Ct. App. 2003). South Carolina law does not ordinarily permit a conversion claim founded on an intangible property interest unless the interest is "merged in, or identified with, some document." Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P., 684 S.E.2d 756, 763 (S.C. 2009) (dismissing plaintiff's conversion claim that

---

[2] We assume without deciding, that the district court correctly determined that Dickerson possesses an intangible property interest in his medical records under South Carolina law.

9

alleged the defendants used plaintiff's name without her consent because there was no documentation evidencing plaintiff's exclusive right to the use of her name).  Under South Carolina law patients do possess rights in obtaining truthful diagnoses, see J.A. 302 (citing Hook v. Rothstein, 316 S.E.2d 690, 694-95 (S.C. Ct. App. 1984) overruled in part on other grounds by Linog v. Yampolsky, 656 S.E.2d 355, 358 (S.C. 2008)), and in accessing information contained in medical files, although the physician maintains an ownership right in the actual file, id. (citing S.C. Code Ann. §§ 44-115-20; 44-115-30 (2009)).

Although Dickerson contends that his interest in his medical information was merged in or identified with the medical records themselves, South Carolina has designated physicians as the lawful owners of any medical record within their possession. See S.C. Code. Ann. § 44-115-20.  And as the district court pointed out in its opinion denying Dickerson's motion to alter or amend its previous judgment, those courts that have addressed this issue have questioned whether a patient's possessory or privacy interest in their information contained in medical records can form the basis of a conversion claim.  J.A. 336. Because the medical records belong to the physicians who possess them and the law merely affords patient's access to copies of their records, the district court was correct to conclude that a

10

claim of conversion with respect to the medical records could not be maintained.

### III.

Finally, Dickerson appeals the district court's dismissal of his claim for declaratory and injunctive relief. Dickerson contends that the district court misapprehended the bases for these claims and that his requests for declaratory and injunctive relief are based on the RICO violation and not the Health Insurance Portability and Accountability Act, ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996), or any other provision of law.

For the following reasons, we affirm the district court's dismissal of Dickerson's requests for declaratory and injunctive relief. With respect to the request for declaratory relief, Dickerson's argument on appeal is not responsive to the district court's determination that the proper avenue for requesting medical records given the disposition of this case is through a discovery motion. It is within the discretion of the district court to grant declaratory relief and such relief is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

11

Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (internal quotation marks omitted). Here, the district court gave a well-reasoned answer for why a declaration was "ill suited" to determine whether Dickerson and the putative class members were entitled to the disclosure of the medical records. Alternatively, dismissal of the claim for declarative relief is warranted because of the dismissal of Dickerson's RICO claim.

With respect to the request for injunctive relief, Dickerson now claims that his request for injunctive relief was only predicated on the RICO violation despite the fact that the FAC's pleadings explicitly assert HIPAA violations. As determined above, Dickerson has not sufficiently pled a RICO claim, and consequently he cannot be entitled to injunctive relief on this basis.

IV.

For the foregoing reasons, we affirm the district court's grant of the Providers' motions to dismiss. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

AFFIRMED

12