**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Jamesetta Washington, as Guardian ad Litem for Jayden W., a minor, Appellant,

v.

Edmund Rhett Jr., M.D. Low Country Obstetrics and Gynecology, P.A., and Tenet South Carolina, Inc., d/b/a East Cooper Regional Medical Center, Defendants,

Of whom Edmund Rhett Jr., M.D. is the Respondent.

Appellate Case No. 2010-173247

———————————

Appeal From Charleston County
J. Michael Baxley, Circuit Court Judge

———————————

Unpublished Opinion No. 2014-UP-055
Heard December 11, 2013 – Filed February 5, 2014

———————————

**AFFIRMED**

———————————

Edward L. Graham and John Layton Ruffin, both of Florence, and Mary H. Watters, of Mt. Pleasant, all of Graham Law Firm, PA, for Appellant.

Robert H. Hood and Mary Agnes Hood Craig, of Hood Law Firm, LLC, both of Charleston, and Deborah Harrison Sheffield, of Columbia, for Respondent.

---

**PER CURIAM:** In this medical malpractice case, Jamesetta Washington appeals from a jury verdict in favor of her obstetrician, Dr. Edmund Rhett, Jr., alleging several errors by the trial court regarding jury selection, the admission of evidence, and the jury charge. We affirm.

On July 15, 2002, Jamesetta Washington arrived at East Cooper Regional Medical Center for the delivery of her first child. After Jamesetta had been in labor for twenty-four hours, the baby's heart rate showed periods of deceleration, which caused Dr. Rhett concern over whether the baby was getting enough oxygen. Dr. Rhett decided to deliver the baby with the help of a vacuum extractor, and the baby was born three minutes and seven seconds later with the umbilical cord wrapped around his neck. An arterial blood gas sample indicated the baby was nearly acidotic and had higher-than-normal carbon dioxide levels and low oxygen levels. As the baby's condition continued to deteriorate, medical staff transferred him to the Medical University of South Carolina, where doctors diagnosed him with an intracranial hemorrhage, and operated on him.

Today, the eleven-year-old child suffers from brain damage, including severe developmental delays. He struggles with coordination, articulation and speech, reading and writing, and memory. Jamesetta presented expert testimony from a pediatric neurologist that the child is unlikely to live independently due to his disabilities.

Jamesetta brought this medical negligence action as the child's Guardian ad Litem against several defendants, each of whom settled except Dr. Rhett. Each of her theories of recovery against Dr. Rhett is based on his alleged negligence regarding the use of the vacuum extractor. After a thirteen-day trial, the jury returned a verdict responding "No" to the following question on the verdict form: "Did the Plaintiff prove by the greater weight or preponderance of the evidence that the Defendant Dr. Rhett deviated from the standard of care?"

To recover in any action for negligence, a plaintiff must prove the following four elements: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty by a negligent act or omission; (3) the plaintiff suffered

damages as a result; and (4) the damages were proximately caused by the breach of duty. *Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 537, 725 S.E.2d 693, 696 (2012). Because the jury determined Dr. Rhett did not breach his duty of due care, and thus, did not reach subsequent questions related to causation, this court need not address any issue raised by Jamesetta that relates to causation. *See Stephens ex rel. Lillian C. v. CSX Transp., Inc.*, 400 S.C. 503, 520, 735 S.E.2d 505, 514 (Ct. App. 2012) ("Because the jury's verdict [that neither defendant breached its duty of reasonable care] made it unnecessary for the jury to reach the other issues in the case, it is not necessary that we address any ruling . . . unless it relates to breach of [the defendants'] duty of reasonable care."). On this basis, we decline to address issues related to the admissibility of testimony showing that maternal use of alcohol or genetics may have caused the child's problems because we find these issues relate exclusively to the causation element.

As to the trial court's alleged error in refusing to charge the jury on informed consent, we find Jamesetta's requested charge contained statements that were inapplicable to the facts of this case, and incorrect statements of the law. Specifically, (1) the statement, "a physician must respect a competent patient's refusal of treatment, even in an emergency," is inapplicable because there is no evidence Jamesetta refused any treatment; (2) the statement, "If a competent patient refuses treatment, any medical treatment is a battery, even in an emergency," is legally incorrect, *see Linog v. Yampolsky*, 376 S.C. 182, 187, 656 S.E.2d 355, 358 (2008) ("[N]o independent cause of action for medical battery exists in South Carolina."); and (3) the statement, "if the patient is incapable of providing consent, the consent of a family member [should be sought], before administering treatment" is legally inaccurate, *see Harvey v. Strickland*, 350 S.C. 303, 311, 566 S.E.2d 529, 534 (2002) (rejecting doctor's argument he was under a duty to obtain patient's mother's consent for blood transfusion when patient was unconscious), as well as inapplicable to the facts of this case because there is no evidence Jamesetta was incapable of providing consent. As to all other statements in the requested jury charge, we find the trial court's charge correctly and adequately covered those points of law. *See Welch v. Epstein*, 342 S.C. 279, 311, 536 S.E.2d 408, 425 (Ct. App. 2000) ("When reviewing a jury charge for alleged error, an appellate court must consider the charge as a whole in light of the evidence and issues presented at trial."); *Dalon v. Golden Lanes, Inc.*, 320 S.C. 534, 540, 466 S.E.2d 368, 372 (Ct. App. 1996) ("It is the trial court's function to charge the jury on the applicable law as raised by the pleadings and supported by the evidence.").

As to the jury charge Jamesetta requested on expert compensation, we find the trial court properly refused to give the charge because a jury may consider any evidence the jury determines to relate to the credibility of any witness. *See generally State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012) ("The assessment of witness credibility is within the exclusive province of the jury."). The requested charge states:

> You should not take into consideration the fact that the witness is paid unless there is some evidence or circumstances appearing from the evidence which would fully and reasonably convince you that the testimony of the witness has been influenced because of the sum which he has been paid as a witness.

The charge comes from Ralph King Anderson, *South Carolina Requests to Charge–Civil* § 1-6 (2d ed. 2009), which cites *Anderson v. Campbell Tile Co.*, 202 S.C. 54, 24 S.E.2d 104 (1943), in support. However, *Anderson* is distinguishable from this case for multiple reasons, including: (1) it is a workers' compensation case; (2) it does not relate to the admissibility of evidence; and (3) it does not contain the language Jamesetta requested, or even similar language. Additionally, *Anderson* mentions the payment of experts' fees only once—specifically, when listing it as one of seven factors the Industrial Commission properly considered in weighing expert testimony. *Anderson*, 202 S.C. at 64, 24 S.E.2d at 108 (quoting 20 Am. Jur. ¶1206).

As to Jamesetta's argument that the trial court erred in refusing to allow certain questioning of her expert regarding a study during her reply case, we find the court acted within its discretion to limit the testimony for three reasons. First, Jamesetta was the party who introduced the study. Second, and similarly, she was attempting to undercut the study that she introduced. Third, she had ample opportunity to question Dr. Gary Oakes, Dr. Rhett, and Dr. Lynn Norton concerning the parameters of the study or any other relevant material. These three facts support our conclusion that the trial court acted within its discretion in limiting reply testimony. *See Risher v. S.C. Dep't of Health & Envtl. Control*, 393 S.C. 198, 206, 712 S.E.2d 428, 432 (2011) (stating the admission or exclusion of expert testimony is a matter within the sound discretion of the trial court); *Vernon v. Provident Life & Accident Ins. Co.*, 266 S.C. 208, 222, 222 S.E.2d 501, 508 (1976) (applying an abuse of discretion standard to a question of admission of reply testimony).

As to Jamesetta's argument that the trial court erred in admitting demonstrative evidence, we find the issue unpreserved for appellate review. *See Gause v. Smithers*, 403 S.C. 140, 151, 742 S.E.2d 644, 650 (2013) (stating 'an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review' (quoting *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 780 (2004))).  Jamesetta argues the trial court erroneously allowed Dr. Rhett to use a pelvic model and a vacuum pump as demonstrative evidence.  Her primary argument on appeal is that the trial court allowed the use of these items in contravention of a pretrial case management order.  Her secondary argument is that the model was not to scale, and the pump was used in a misleading demonstration.  Both arguments are unpreserved for a number of reasons.  First, the only objection Jamesetta made at the time Dr. Rhett introduced the pelvic model was to "the use of a measuring instrument to measure a dimension that has absolutely no relevance."  We read this as an objection to the introduction of the measurement, not the use of the model.  She made no objection to the vacuum pump.  Because she made no objection to either item being used as demonstrative evidence, nothing has been preserved for this court's review. *See id.* Second, at trial, Jamesetta asserted her primary argument—the demonstrative evidence was used in violation of the case management order—only in connection to the use of an animation.  While she mentioned the model in her argument about the animation, she never raised the case management order as a basis for disallowing the use of the pump or the model.  Thus, the issue was not properly preserved.  Third, Jamesetta's secondary arguments regarding the misleading pump demonstration and the model being out of scale were never presented to the trial court.  As a result, this issue is not preserved. *See id.*

Finally, we find Jamesetta's argument the trial court erred in conducting voir dire is also unpreserved for appellate review.  Twice, the trial court asked Jamesetta if she had any objection to the voir dire process; both times she responded, "No, Your Honor."  By declining the court's invitation to object, Jamesetta failed to preserve the issue for appellate review. *See id.*

For the reasons stated above, the judgment of the trial court is **AFFIRMED**.

**FEW, C.J., KONDUROS, J., and CURETON, A.J., concur.**